Webster, adm'r, vs. Tibbits et al.

---

WEBSTER, Adm'r &c., vs. TIBBITS and others.

If A., having covenanted to convey land to B., subsequently, at B.'s request, conveys the land to C., he thereby performs his covenant, and may maintain an action against B. for the unpaid purchase money.

G. held a mortgage on land of W. containing 325 acres. In consideration of a deed of 270 acres of said land to be executed to them by W., T. and F. covenanted to pay G. $4470 in such payments as had been or might be agreed upon between them and G., and to procure within two years a release from the mortgage of the 55 acres retained by W., and they at the same time executed to W. a penal bond conditioned to procure such release in the time named. W., on his part, covenanted to pay, in a manner which should be acceptable to G., "the balance of the mortgage and interest," and the costs of a suit then pending to foreclose the mortgage. The foreclosure suit having gone to judgment, in consequence of the neglect of T. and F. to pay the $4470, W. paid the sheriff the costs and that portion of the mortgage debt which he had agreed with T. & F. to pay; but *the whole* of the mortgaged land was sold to G. for the $4470 and interest thereon from the date of said agreement; and G. afterwards conveyed *the whole* of the land to F. and the wife of T., and the mortgage sale and this

conveyance are alleged to have been made by collusion between G. and T. and F., and in fraud of W.'s rights. On demurrer to a complaint stating these facts, *Held*,

1.  That T. and F. purchased of W. only the *equity of redemption* of the 270 acres; and the execution of the deed therefor, and the payment made by W., constituted a full performance of the agreement on his part.

2.  That by the terms of said contract T. and F. became responsible to W. for the payment of said sum of $4470 *from the date of the agreement*, and, as between them and him, were bound to pay any interest which might subsequently accrue on that portion of the mortgage debt.

3.  That the agreement of W. to pay "in a manner acceptable to G." was performed by a payment which G. was legally bound to accept.

4.  That an averment in the complaint that "although the two years have expired within which T. and F. covenanted in their bond to release W.'s land from the lien of G.'s mortgage, they neglect and refuse to perform said covenant or to make any restitution or equivalent compensation for the collusive and fraudulent acquisition and possession" of said land by themselves, is a sufficient averment of a breach of the covenant.

5.  That no cause of action is shown against the wife of T. To maintain an action to compel her to deed the 55 acres to the heirs of W., it must be shown that the consideration of the conveyance of said land to her by G. was from her husband.

An administrator may sue in his representative character on a bond running to his intestate; but an equitable action to obtain from the defendants a deed of lands which belonged to the intestate, and of which they are alleged to have fraudulently acquired the legal title, contrary to the condition of said bond, must be brought by or in the name of the heirs.

A joint demurrer by two or more defendants on the ground that the complaint does not state a cause of action, is bad if the complaint shows a cause of action against *one* of them.

APPEAL from the Circuit Court for *Jefferson* County.

This action was brought by *Catharine Webster*, as administratrix of the estate of Lemuel Webster, deceased, against *Samuel H. Tibbits, Asa Foster* and *Sally P. Tibbits*. After the proper allegations as to the representative character of the plaintiff, the complaint alleges in substance the following facts: In the life time of her decedent he was the owner and in possession of certain described lands in Walworth county in this state, comprising about 325 acres and worth $6000. On the 19th of October, 1854, he mortgaged said lands to one Persons to secure the payment of $4,540 in five years from that date, with interest payable annually; and in October,

1856, the mortgage was sold and assigned to one George Goodrich of Chautauque county, N. Y. In September, 1861, Goodrich commenced an action in the Walworth circuit court to foreclose said mortgage for over $5000 claimed to be due thereon; and while said action was pending, to wit, on the 15th of October, 1861, *Samuel H. Tibbits* and *Asa Foster* entered into a written agreement, under seal, with said Webster, which, after the formal part, is as follows: "Said parties of the first part [*Tibbits* and *Foster*], for and in consideration of a certain deed of land from said Lemuel Webster to them for two hundred and seventy acres of land, agree to pay George Goodrich—(he, the said Goodrich, now holds a mortgage of $4,540, with interest, upon the land deeded as before stated, and also upon fifty-five acres more [belonging] to said Webster)—the said *Tibbits* and *Foster* are to pay to the said Goodrich the full sum of $4470, in such payments as have been or may hereafter be agreed upon by the first party and said Goodrich, and, within two years from date, to procure a satisfaction of the aforesaid mortgage upon that part of the farm retained by Mr. Webster, according to the conditions of a certain bond bearing even date herewith; the balance of the mortgage and interest said Webster is to pay in a manner which will be acceptable to the said Goodrich, and to pay the taxes for this year, and costs of the suit now commenced." Thereupon Webster, "at the request of said *Samuel H. Tibbits* and *Asa Foster*, conveyed by deed the aforesaid two hundred and seventy acres of land" to said *Asa Foster* and *Sally P. Tibbits*, the wife of said *Samuel H.* At the same time *Samuel H. Tibbits* and *Asa Foster* executed to Webster the bond referred to in the above agreement, in the penal sum of $3000, conditioned that they should within two years from its date obtain a release of the fifty-five acres retained by Webster, from the incumbrance of the mortgage owned by Goodrich. Webster paid the taxes on the whole premises for 1861, according to his covenant, and, before the 23d of June, 1862,

offered to pay Goodrich, through one Bronson, his agent, "the balance due upon the mortgage, over and above the sum of $4470 on the 15th of October, 1861, together with all taxable costs that had accrued in said foreclosure suit up to the day said offer was made, so that said *Tibbits* and *Foster* would have had only the aforesaid sum of $4470, and interest thereon from October 15th, 1861, to pay the said Goodrich in order to obtain a legal discharge of the mortgage and discontinuance of the action; but said agent, as plaintiff believes and charges to be true, at the instance and request of said *Tibbits* and *Foster*, and for the purpose of defrauding said Webster out of said fifty-five acres of land, refused to receive said money." Webster thereupon, on the 19th of June, 1863, paid to the sheriff (who had in the mean time been charged with the sale of said mortgaged premises under a judgment in favor of said Goodrich in said foreclosure action) the sum of $665. 06; "which sum included the excess of principal and interest due on said mortgage October 15th, 1861, over and above the aforesaid sum of $4470, and the interest on that excess up to said 19th of June, 1862, together with all the taxable costs up to that date in said action;" and the sheriff gave him "a receipt for that sum as a payment of so much money on said judgment and costs of action;" of all which defendants had notice.   Afterwards, on the 23d of the same month, the whole mortgaged premises were sold to Goodrich for the balance of the mortgage debt; and the sheriff's deed executed to him. On the 5th of July following, "to more fully carry out the alleged collusion and fraud," Goodrich conveyed the whole of said mortgaged premises to said *Asa Foster* and *Sally P. Tibbits*, who took immediate possession of the same and have since remained in possession, receiving the rents, issues and profits. And although the two years have expired within which *Samuel H. Tibbits* and *Foster* covenanted as aforesaid to release from the lien of the Goodrich mortgage the fifty-five acres reserved by Webster, "they now neglect and refuse to perform [said

covenant], or make any restitution or equivalent compensation for the collusive and fraudulent acquisition and possession" of said fifty-five acres, the value of which is alleged to be at least $3000. Prayer, that said *Asa Foster* and *Sally P. Tibbits* be required to make a proper conveyance of said fifty-five acres to the defendant as guardian of the minor heirs of said Lemuel Webster, or to them directly; or that they be directed to pay the plaintiff for the use and benefit of said heirs, the sum of $3000, the penalty of said bond; and for general relief.

The defendants demurred to the complaint as not stating a cause of action, and specified the following particular grounds of demurrer: " 1. It appears on the face of the complaint that the agreement and bond sued on were abandoned by the parties thereto, by mutual agreement, immediately after the same were entered into. 2. It does not appear by the complaint how the defendant *Sally P. Tibbits* is liable on the agreement or bond, or in any other way. 3. It appears upon the face of the complaint that defendants *Samuel H. Tibbits* and *Asa Foster* were to have two years from the 15th of October, 1861, to perform their part of the agreement and bond—i. e. to pay Goodrich the $4470; and that whenever, within that time, they should make that payment, said Lemuel Webster was to pay the balance due upon the mortgage to Goodrich, and the costs of the action to foreclose the same; and that said Webster never paid or offered to pay any balance due on said mortgage and costs, except the supposed balance due October 15th, 1861. 4. It appears on the face of the complaint that on the 15th of October, 1861, there was due upon said mortgage, over and above the sum of $4,470, a balance of $2,294; which balance the complaint does not show that Webster ever paid or offered to pay.

The venue was afterwards changed to the circuit court for Jefferson county; where the demurrer was overruled, and the defendants appealed.

*I. P. Walker*, for appellants :

1. The complaint, after alleging the making of the written contract by which 270 acres of land were to be conveyed to *Samuel H. Tibbits* and *Asa Foster* as the consideration of their promise, admits and alleges that Webster thereupon, at the request of said Samuel H. and Foster conveyed the land to *Asa Foster* and *Sally P. Tibbits*. This shows that the written contract was abandoned by the parties, and another and verbal contract substituted in its stead, which is not declared on, and which as to *Sally P. Tibbits* is void under the statute of frauds. By the request and compliance alleged, the entire direction of the consideration was changed, new obligors and beneficiaries were substituted; and *Samuel H. Tibbits* resigned all advantages under the contract. There was a meeting of minds upon a different consideration, between different parties, for a different end. Such a substitution of one contract for another is an accord and satisfaction of the first contract. Addison on Con., 1099; 5 Exch., 104; 29 Barb., 410. 2. The *consideration* of the written contract was the deed to be made to *Samuel H. Tibbits* and *Foster;* and no such deed was ever made. The consideration of the verbal contract was a *conveyance* of the 270 acres by deed to *Sally P. Tibbits* and *Foster;* but it appears that the deed which was executed conveyed nothing, and was of no benefit to the defendants or injury to Webster in any way ; since the foreclosure suit proceeded to judgment, the land was sold to Goodrich, and the grantees in Webster's deed, in order to acquire title at all, had to buy the land of Goodrich, and get their title from him. There was therefore a total *failure* of consideration as to all the defendants. 3. There was also an entire failure on the part of Webster to perform the *conditions precedent* on his part. (1.) If the condition as to a deed of 270 acres of land could have been fulfilled by conveying to *Sally P. Tibbits* and *Foster*, still the deed must be effectual to *convey title* to the land, or the covenant is not performed. 5 Abb. Dig., 328, § 20; 11 Vt., 549. (2.) The complaint

does not show that Webster ever paid any sum to Goodrich "in a manner acceptable" to him, or to any person authorized to act on his part. If the offer to Bronson, without the statement of a single fact showing him to have been an agent, is equivalent to an offer to Goodrich himself, even this offer is shown to have been unacceptable. Where a party contracts for the act, consent, acceptance or satisfaction of a third person, he is bound at all hazard, and without reason, for the conduct of such third person. 1 Chitty's Pl., 312; 6 Term, 710; 13 Wend., 95; 24 id., 447. 4. The complaint does not properly aver a breach by defendants. It does not aver that Webster *notified Tibbits* and *Foster* that he had paid Goodrich the balance with interest, the costs of the foreclosure suit, and the taxes of 1861, and thereupon *requested* them to pay the $4,470; nor that Webster or his representatives ever demanded a conveyance of the fifty-five acres (10 Wis., 18, and authorities there cited); nor that the penalty of the bond has not been payed; nor that *Tibbits* and *Foster* did not within two years pay to Goodrich the $4,470, and obtain a release of Webster's land from the mortgage. 5. The complaint shows no cause of action against *Sally P. Tibbits.*

*Winsor & Smith,* for respondent.

*By the Court,* DIXON, C. J. It is a familiar rule that the time in which a written contract is to be performed may be enlarged, or the manner of performance changed, by a subsequent parol agreement; and that a performance according to such parol agreement discharges the written contract. The following are some among the earlier cases in which the rule is strongly illustrated: *Cuff v. Penn,* 1 Maule & Selwyn, 21; *Fleming v. Gilbert,* 3 Johns., 528; *Keating v. Price,* 1 Johns. Cases, 22; *Robinson v. Batchelder,* 4 N. H., 40. And it seems not very material to discuss the reasons of the rule; for whether it be on the principle that he who prevents a thing being done shall not avail himself of the non-performance he

has occasioned, as in some of the cases, or that it is a waiver or *parol* dispensation of the performance of the original contract, or an accord and satisfaction, or a kind of substituted performance, as in other cases, the result is the same. All agree that a compliance with the parol agreement is in substance a compliance with the written contract. It is equivalent to an actual performance. I prefer the definition of Lord ELLENBOROUGH in *Cuff v. Penn*, that it is a substituted performance. In this case the defendants *Samuel H. Tibbits* and *Asa Foster* bought the land, and the written article of agreement recites a conveyance to them. The complaint avers that *at their request* the conveyance was made to *Sally P. Tibbits* and *Asa Foster*. This was a performance of the condition precedent, if such it was, and a good consideration for the undertaking of *Samuel H. Tibbits* and *Asa Foster* to pay off the $4,470 of the mortgage which was then upon the land. It was equivalent to a conveyance to *Samuel H. Tibbits* and *Asa Foster*. If A owes B a sum of money upon written promise to pay, and afterwards B directs A to pay the money to C, and A does so, it is a satisfaction of the debt. So if A covenant with B to convey to him a tract of land, and B subsequently requests A to convey the land to C, and A does so, it is a satisfaction of the covenant. And if the purchase money, or any part, be still due and unpaid from B to A, A may have his action against B to recover it. In bringing such action he would do what the plaintiff has done here ; he would state the facts showing the substituted performance, and claim a recovery.

This view of the law seems to dispose of the first point in the argument of the counsel for the defendants, and portions of the second and third points. Those parts of the second and third points in which it is urged that the consideration has failed, or that the contract is wholly unperformed on the part of the plaintiff, because the land was afterwards sold under the mortgage, are obviously untenable, for this reason: It

was not an absolute and unincumbered estate for which the defendants bargained. They purchased the *equity of redemption* of 270 acres of the land, and the conveyance of that equity, in the manner stated, constituted a valid consideration for their undertaking to pay off so much of the mortgage, and also, upon due performance of the contract on the part of Webster, for their agreement to satisfy the mortgage upon the 55 acres retained by him, or, in default of that, to pay him the $3,000 named in the bond; and if afterwards, through their neglect to pay the $4,470, the whole estate was sold to satisfy the mortgage, and their equity lost, it was no failure of the consideration. The consideration vested upon the conveyance of the equity of redemption to them or to the persons designated by them as the proper parties to receive it. It is true that the article of agreement recites the undertaking to be "for and in consideration of a certain deed of land from said Samuel Webster to said *Foster* and *Tibbits* for two hundred and seventy acres of land," &c. The counsel emphasizes these words, and insists that the defendants did not get the land, or rather that they lost it by the foreclosure. It may be that the words "*conveyance of land*," taken by themselves, or standing in some other connection, would be construed to signify the transfer of an absolute title; but such was clearly not the sense in which they were employed in this contract. It was proper to speak of the transfer of the equity of redemption as a conveyance of land, and that was the manner in which the parties did speak in the contract before us. It would be not only very illogical, but most manifestly contrary to the intention of the parties, to hold, on the face of the contract, that the defendants bargained for or supposed that they were to have an absolute title, that is, a title free from the incumbrance of the mortgage. Their counsel does not contend for that, and still we do not see, if his argument is sound, but such must be the result.

Whether the complaint is bad in substance, then, depends upon the other objections urged.

It is insisted that Webster did not perform the contract on his part, for two reasons: First, that he did not pay the balance of the mortgage and interest *in a manner acceptable* to Goodrich; and second, that the sum which he did pay was too small. We cannot agree with the counsel upon either of these propositions. Any payment which was in law a discharge of so much of the mortgage debt as Webster was bound to pay, was a payment *acceptable* to Goodrich within the meaning of the contract. It was *acceptable* because he was bound to *accept* it. The parties did not contract that the payment should be mentally agreeable or pleasing to Goodrich. The meaning was that the payment should be such as Goodrich would in fact accept, or in law be bound to accept. The sheriff was his agent for the purpose of receiving payment of the mortgage, and a payment to the sheriff was a payment to him. Webster paid the money to the sheriff, who accepted it, of which the defendants *Samuel H. Tibbits* and *Foster* had due notice. If then they had paid the proportion of the mortgage debt which fell to them, there would have been no sale, and the title under the conveyance of the equity of redemption would have become perfect and indefeasible.

As to the amount of Webster's payment, that depends on the proper construction of the contract. We think clearly that *Tibbits* and *Foster* were bound to pay the accruing interest upon the $4,470 from the date of the contract. The mortgage was originally for the sum of $4,540. Of this sum *Tibbits* and *Foster* were to pay the sum of $4,470, and "the balance of the mortgage and interest" Webster was to pay. We understand by this that *Tibbits* and *Foster* were to pay the $4,470, as of the day of making the contract. It is true that they were to do so in such payments as had been or might thereafter be agreed upon between them and Goodrich, and to procure a discharge of the mortgage upon Webster's part of the

farm, within two years. But then their undertaking to pay so much of the mortgage at that date was absolute. If they had not agreed or could not agree with Goodrich for a delay, the payment was to be immediate. And if they did get time, it would of course be upon the condition of paying the interest to Goodrich, and not charging it as an additional sum upon the portion of the mortgage to be paid by Webster. As between them and Webster it was to be treated as a present payment. The counsel dwells upon the words " *and interest*," as if they were intended to bind Webster to pay all the interest which might accrue after, as well as that which had accrued before the making of the contract. It was understood at the time that considerable interest had already accrued and was in arrear upon the mortgage. It was to such interest that we understand the reference. It is an equivalent expression for *principal and interest*, that is, the principal and interest then due.

A further objection is, that the complaint does not properly aver a breach or default of performance by the defendants. We are of opinion that this objection also is not well taken. The breach is well assigned. It is that the two years have expired in which the defendants covenanted to release the fifty-five acres from the lien of the mortgage, and that they now neglect and refuse to perform the same, or to make any restitution or equivalent compensation.

These remarks we believe dispose of all of the objections to the substance of the complaint as against the defendants *Samuel H. Tibbits* and *Asa Foster*.

It is true, as urged by the counsel, the complaint states no cause of action against the defendant *Sally P. Tibbits ;* and if she had demurred separately, instead of joining her co-defendants, judgment must have gone in her favor. But a joint demurrer by two or more defendants, that the complaint does not state facts sufficient to constitute a cause of action, must be overruled, if a cause of action is stated against either defend-

ant. *Woodbury v. Sackrider*, 2 Abbott's Pr. R., 402; *Peabody v. Insurance Co.*, 20 Barb., 339.

The proceeding must be regarded as an action by the plaintiff, as administratrix, to recover the penalty of the bond. Such an action can be maintained by her in her representative capacity. To such an action *Sally P. Tibbits* is not a proper party, and no cause of action is stated against her. But she should have filed her separate demurrer.

But if the land is claimed, and suit is brought for that, it must be in the name of the heirs, or they must be parties. And then, to show a cause of action against *Mrs. Tibbits*, it must also be averred that the consideration for the conveyance from Goodrich to her was from her husband. If she had a separate estate, and paid for the land with her own money, or if the money was furnished by some person other than her husband, the land in her hands would not be affected by any trust growing out of the contract. She was no party to the contract.

Order affirmed.