[No. 7382.   Decided June 8, 1908.]

Daniel Finch, *Respondent*, v. Ira M. Noble *et al.*,
*Appellants.*[1]

Vendor and Purchaser—Purchaser in Possession—Acquiring Title Adverse to Vendor. Purchasers in possession under a contract for a conveyance, who have failed to pay the taxes as agreed, resulting in a tax sale, cannot acquire the title from the purchaser at a tax sale, as against their vendor, although they had no notice of the tax sale until long thereafter and were not in collusion with the purchaser.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered May 20, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to declare a contract a mortgage and to foreclose the same. Affirmed.

*Vance & Mitchell*, for appellants.
*Geo. H. Funk*, for respondent.

Rudkin, J.—On the 19th day of July, 1898, David Mitchell and wife, as owners of the property now in controversy, entered into a contract whereby they agreed to convey to the defendants, and the defendants on their part agreed to purchase, to pay the purchase price in certain specified installments with interest, and to pay regularly and seasonably all taxes and assessments levied against the property from and after the day of the contract of sale. The defendants entered into immediate possession of the property under

[1]Reported in 96 Pac. 3.

this contract and have continued in possession ever since. On the 30th day of January, 1899, Mitchell and wife conveyed to the plaintiff subject to the outstanding contract with the defendants. No payments have been made on account of the purchase price, except the interest accruing prior to the 19th day of July, 1904. The defendants failed and neglected to pay the state and county taxes levied against the property for the years 1898 to 1903, inclusive, and, by reason of such failure and neglect, the tax lien was foreclosed at the suit of Thurston county, and on the 30th day of January, 1905, one James K. L. Mitchell purchased the property at tax sale for the sum of $30.34, and received a tax deed. On the 8th day of August, 1905, the defendants purchased from Mitchell, the purchaser at the tax sale, for the sum of $150, and received a quitclaim deed. In addition to the foregoing facts, it was found by the court that the plaintiff was informed that the premises had been sold for taxes, after the sale and before the delivery of the tax deed, that the defendants had no knowledge of the tax sale until long after the sale was made, and that there was no collusion between the defendants and the purchaser at the tax sale. The present action was instituted for the purpose of declaring the contract of sale between the Mitchells and the defendants a mortgage and foreclosing the same. On the foregoing facts, over which there is no controversy, the court gave judgment according to the prayer of the complaint, and the defendants have appealed.

The general rule that a tenant or purchaser in possession is estopped to deny the title of his landlord or vendor and will not be permitted to acquire a title adverse to him exists in one form or another in all the states. This general rule is conceded by the appellants, so that we are only concerned with the limitations upon the rule and its application to the facts before us. The appellants frankly concede that they could not themselves become purchasers at the tax sale or acquire a tax title through collusion with others, but they

earnestly insist that, because they did not purchase directly at the tax sale or act in collusion with the purchaser, they may defend under the tax title, notwithstanding the tax sale was made and the tax title exists solely by reason of their own breach of covenant and default. With this last contention we are unable to agree. *Shepardson v. Elmore,* 19 Wis. 446; *Busch v. Huston,* 75 Ill. 343; *Moss v. Shear,* 25 Cal. 38, 85 Am. Dec. 94; *Haskell v. Putnam,* 42 Me. 244; Cooley, Taxation (3d ed.), 963 *et seq.*

In *Shepardson v. Elmore, supra,* the court said:

"The action being founded upon the covenant, and proceeding upon the obligation of the defendants to pay the taxes, it can make no difference that the defendants took the deed after the expiration of the term. They are as much estopped from denying the plaintiff's title and right of possession as if they had received the deed during the term. The controversy originates in a violation by the defendants of one of the conditions of the lease, and they cannot avoid estoppel by showing that the mischief of which the plaintiff complains was consummated in part after the expiration of the term."

In *Busch v. Huston, supra,* the court said:

"It appears that the lands were sold for the nonpayment of taxes for the year 1844, and conveyed by the sheriff to John E. Johnston, and that he, on the 24th day of May, 1848, quitclaimed the lands to John Shoemaker; but it is not insisted that Shoemaker ever relied upon this deed as, in fact, conveying any title to him. It is evident that he could not do so, for two reasons: 1st. The sale was made in consequence of the nonpayment of taxes which he was under obligations to have paid by the terms of his agreement with John Dewitt, Sr., by which he held and occupied the premises. . . ."

In *Moss v. Shear, supra,* the court said:

"If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such negligence, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who

purchased at the sale. Otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly."

In *Haskell v. Putnam, supra,* the court said:

"It was the duty of the tenant to pay the taxes upon the demanded premises. The omission to do so was a violation of good faith and a breach of the conditions upon which he occupied them. To permit him to set up a title which he has obtained by a violation of his duty if it were in other respects good, would be most manifestly inequitable and in fraud of the rights of the demandant. Such a defense cannot prevail, either in law or in equity, and it requires no small degree of assurance to set it up in a court of justice."

In each of these cases the tax title came through a third person, without collusion, but the court deemed that fact utterly immaterial. The fact that the party in possession and claiming under the tax title was seeking to take advantage of a title which was made possible by his own breach of covenant and default was deemed fatal to his claim.

The appellants concede that the respondent is entitled to a personal judgment for the amount claimed, and there would seem to be little difference between a personal judgment for the purchase price and a judgment declaring the amount a lien, in so far as the purchasers are concerned, for no exemption rights can prevail against either, but we prefer to rest our judgment on the ground on which it was placed in the court below.

Finding no error in the record, the judgment is affirmed.

HADLEY, C. J., FULLERTON, MOUNT, CROW, and DUNBAR, JJ., concur.