[No. 29109. Department One. November 12, 1943.]

DORA STEPHENS, *Appellant*, v. RALPH W. KESSELBURG *et al.,*
*Respondents.*[1]

[1]Reported in 143 P. (2d) 289.

428

*H. J. Gielens,* for appellant.

*Chas. L. Westcott,* for respondent.

STEINERT, J.—This was an action in which plaintiff sought to have herself adjudged the owner of certain real property; to have the title thereto quieted in her; to compel the removal of the defendants from the premises; and to obtain a judgment against the defendants for the rental value of the property during the period of their possession. Defendants answered the complaint, setting up a general denial and several affirmative defenses. Plaintiff in turn filed a reply containing both denials and affirmative allegations. Defendants demurred to the affirmative matter in the reply, and the demurrer was sustained. Plaintiff having declined to plead further, the court entered judgment dismissing the action. Plaintiff appealed.

Necessarily, we must look to the pleadings alone to ascertain the facts upon which our decision is to rest. The allegations of the complaint may be summarized as follows: On and prior to August 15, 1937, appellant, Dora Stephens, was the owner of the real estate involved in this action. On that date, she and the respondent Ralph W. Kesselburg,

who will hereinafter be referred to as though he were the sole respondent, entered into an oral contract wherein and whereby it was agreed that respondent would purchase the property at a price of six hundred dollars and pay all accrued taxes against the property. Payments on the contract were to be made in monthly installments of ten dollars each, including interest, and were to commence three weeks after the day on which the agreement was made. It was further agreed that respondent would later sign a "land contract" covering the property. Respondent went into possession of the premises and has remained there ever since, but he has failed to pay any part of the purchase price or the taxes and has refused to sign a written agreement. While in possession of the premises, respondent surreptitiously purchased the property at a tax sale. Learning of what the respondent had thus done, appellant on February 6, 1941, notified him that she disavowed and renounced the oral agreement. The rental value of the property during the period of respondent's possession was, and is, twelve dollars a month.

In his answer to the complaint, respondent admitted that he was in possession of the property; that no written contract was ever entered into by the parties; and that no money payment had ever been made to the appellant. The answer denied all the other averments of the complaint except as expressly admitted by the respondent in subsequent affirmative allegations. The answer then set forth respondent's version of the transaction, together with a specific defense based on the statute of limitations. The affirmative matter of the answer, stated in chronological order, is, in substance, as follows:

At all times mentioned in the complaint prior to January 28, 1939, Mrs. F. S. Johnston was the owner of the property in question. Respondent entered into an oral agreement with Mrs. Johnston for the purchase by him of the property, the agreement to be later evidenced by a "land contract." The price orally agreed upon was six hundred dollars, payable in monthly installments of ten dollars, including

interest, and payments were to begin when respondent had completed certain repairs and improvements on the premises in order to make the residence thereon habitable. Mrs. Johnston, then the owner, represented to the respondent that the property was free from all taxes and encumbrances of every nature. Upon these representations, respondent moved onto the premises and expended large sums of money and performed considerable labor, the value of which far exceeded any rental value the premises in their original condition may have had. The occupancy of the premises by the respondent was to be without charge, and only as incident to the contemplated purchase under contract. No demand was ever made upon the respondent by the appellant or by Mrs. Johnston for either rent or possession of the property, until after the transpiration of the events as hereinafter narrated.

The answer then alleged that on January 16, 1939, the property was sold to Pierce county under foreclosure proceedings for delinquent taxes accruing from 1930 to 1933, inclusive; that thereafter, on November 28, 1939, respondent purchased the property from the county, under a land contract, at a purchase price of $410; and that since that time he has been in possession of the property under that contract.

The answer finally alleged affirmatively that more than three years had elapsed between the date of the sale of the land to Pierce county for taxes and the institution of this action, and that any claim to the premises which appellant or Mrs. Johnston might have had by virtue of their former ownership was barred by the statute of limitations.

In her reply to respondent's answer, appellant denied that Mrs. Johnston was the owner of the property, but admitted that the title thereto stood in the latter's name, Mrs. Johnston being appellant's mother. Appellant further denied that she or her mother had ever represented to the respondent that the property was free and clear of taxes.

The reply then alleged affirmatively that Mrs. F. S. Johnston, the mother, held title to the property under an oral

trust for the appellant, and that in the negotiations with respondent Mrs. Johnston was acting solely as appellant's agent.

Proceeding further, affirmatively, the reply alleged: Respondent at all times knew of the existence of the taxes and agreed to pay them. Upon that condition, respondent was let into possession of the property and made improvements thereon. Later, respondent told the appellant that he had paid the taxes, but that statement was false and untrue. This false statement was made by respondent with the intent to mislead and defraud appellant by lulling her into the belief that no danger of foreclosure existed, and, further, to enable respondent to get title to the property in violation of his prior oral agreement. Through the fraud thus practiced by the respondent, he succeeded in purchasing the property from the county, and after so procuring it he informed appellant that he would not sign a contract with her. Appellant did not discover the falsity of respondent's statement, or the perpetration of the fraud by him, until February, 1941.

As stated before, respondent demurred to the affirmative matter in the reply, and the demurrer was sustained.

According to a familiar rule, respondent's demurrer to the reply had the effect of searching the entire record and admitted the truth of all facts, including admissions, well pleaded by the appellant in her complaint and reply. See *Miller v. Paul,* 155 Wash. 193, 283 Pac. 699.

The facts as thus confessed by the demurrer, and therefore to be considered as agreed between the parties, may now be summarized as follows: On August 15, 1937, appellant was the owner of the property here involved, the title to which, however, stood in the name of appellant's mother as trustee for the appellant under an oral trust. On that date, appellant, acting through her mother, entered into an oral contract with the respondent, wherein respondent agreed to purchase the property at a price of six hundred dollars, payable in monthly installments, no part of which has been paid. Respondent further agreed therein

to pay the accrued taxes, and upon that condition was let into possession of the premises and was permitted to make repairs and improvements thereon. Respondent thereafter falsely represented to the appellant that he had paid the taxes, and such representation was made by him for the purpose of lulling appellant into a sense of security and belief that no danger of foreclosure of taxes existed, and for the further purpose of securing to himself the title to the property in violation of his oral contract. The taxes were not paid by the respondent, in consequence of which the county foreclosed its lien therefor and, on January 16, 1939, acquired the property at the tax sale. Thereafter, on November 28, 1939, respondent surreptitiously purchased the property from the county on contract, and thereupon refused to enter into any written agreement with the appellant respecting the land in question. Appellant did not learn of respondent's failure to pay the taxes or of his surreptitious purchase of the property until some time in February, 1941, whereupon she disavowed and renounced her oral agreement made with the respondent.

Appellant contends that, under the facts as last above summarized, the respondent was either a purchaser of the property, on the theory that the contract, though oral, had been partly performed *by the respondent,* sufficiently to take it out of the operation of the statute of frauds; or, if the contract was within the interdiction of the statute, then the respondent, having gone into, and retained possession of, the property, became a tenant thereof at the will of the appellant. In either event, so the appellant contends, respondent could not acquire title to the land adverse to her.

 It is the general rule in this state that a tenant or purchaser in possession of property is estopped to deny the title of his landlord or vendor and will not be permitted to acquire a title adverse to him. *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3, 126 Am. St. 880; *First Nat. Bank v. Mapson,* 181 Wash. 196, 42 P. (2d) 782. That rule, however, does not prohibit a tenant from purchasing the property at a judicial or execution sale, because, by purchasing at such sale, he

is not disputing his landlord's title as of the time when the tenancy was created, but is acquiring a title which subsequently arose. *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648; *Twardus v. Crewson,* 182 Wash. 522, 47 P. (2d) 829. For the same reason, it might well be argued that the general rule would not ordinarily prevent a vendee under a contract from purchasing at such judicial or execution sale.

It should be noted, however, that, in the *Finch* and *Mapson* cases, *supra,* which followed the general rule, the respective vendees had agreed to pay the taxes or encumbrances upon which foreclosure proceedings were ultimately brought and the property sold. The opinions in both of those cases show that such were the facts. On the other hand, the opinions in the *Atwood* and *Twardus* cases, *supra,* make it equally clear that the tenants therein had not agreed to pay the particular encumbrances affecting the lands there in controversy.

█ The rule to be deduced from all the foregoing cases taken together is, as we now declare it to be, that a tenant or purchaser in possession of real property, who has agreed, assumed, or is obligated, to pay an existing encumbrance thereon, will not be permitted to acquire title to the property adverse to the landlord or vendor through a sale and purchase thereof under proceedings to foreclose the lien of such encumbrance.

The rule and the reason therefor are well expressed in the following statement taken from *Moss v. Shear,* 25 Cal. 38, 85 Am. Dec. 94, quoted with approval in *Finch v. Noble,* *supra,* and again in *McGuigan v. Simpson,* 197 Wash. 260, 84 P. (2d) 1012, as follows:

"If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such negligence, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale. Otherwise, he would be allowed to gain an advantage from his own fraud or neg-

ligence in failing to pay the taxes. This the law does not permit, either directly or indirectly."

■ In this connection, and at this time merely for the purpose of indicating our recognition of the rule in this state that a mortgagee cannot acquire a tax title to the mortgaged premises and hold such title against the mortgagor except as a lien upon the premises for the taxes paid in acquiring such tax title, we cite the following cases: *Shepard v. Vincent,* 38 Wash. 493, 80 Pac. 777; *Maher v. Potter,* 60 Wash. 443, 111 Pac. 453; *Oregon Mortgage Co. v. Leavenworth Securities Corp.,* 197 Wash. 436, 86 P. (2d) 206. In the last cited case, it was said:

"According to the text writers, the rule is universal that one interested in land with others, all deriving their interest from a common source, cannot assert an absolute title to the land through a tax deed, to the injury of such others. 2 Jones on Mortgages (8th ed.), § 841; 3 Cooley on Taxation (4th ed.), § 1437."

In such cases, it is presumed in equity that the mortgagee acquired the property for the purpose of protecting the title of his mortgagor and of preserving his own mortgage lien.

■ Applying the presently declared rule to the admitted facts in this case, respondent could not acquire title to the property in question adverse to the appellant, for the reason stated in the case of *Moss v. Shear, supra,* that, having obligated himself under the oral contract to pay the taxes, he could not thereafter, by his failure to pay them and by allowing the land to be sold in consequence of his neglect, add to or strengthen his title by purchasing the property at a tax sale or by subsequently purchasing it from one who had acquired the property at such sale.

■ We turn now to respondent's contentions. He contends first that appellant cannot maintain this action because it appears by her own admission that the legal title to the property is in Mrs. F. S. Johnston under an oral trust, the terms of which are not disclosed. The complaint averred that the appellant was the owner of the property; the reply

alleged that the appellant was the actual owner, although the title stood in the name of Mrs. F. S. Johnston, appellant's mother, under an oral trust for the appellant, and that in entering into the contract with respondent Mrs. Johnston at all times acted as the agent for the appellant.

This action was instituted under Rem. Rev. Stat., § 785 [P. C. § 7517], which provides that any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the property by action in the superior court of the proper county against the tenant in possession or, if there be no such tenant, then against the person claiming the title or some interest therein; and the party bringing such action may have judgment quieting or removing a cloud from his title.

Under that statute, one holding an equitable title to real property may bring an action to recover possession of such property and in the same action may have his title quieted and clouds removed therefrom. *Povah v. Lee,* 29 Wash. 108, 69 Pac. 639; *Johnston v. Gerry,* 34 Wash. 524, 76 Pac. 258, 77 Pac. 503; accord: *McLiesh v. Ball,* 58 Wash. 690, 109 Pac. 209.

While the holder of the legal title here in question may have been a proper party to the action, she was not a necessary party so far as the respondent was concerned, because the question to be here determined is simply whether the appellant or the respondent has the superior title as between themselves.

■ Respondent's next contention is that, since this suit was not commenced until more than three years had elapsed after the date of sale of the property to the county, the action is barred by Rem. Rev. Stat., § 162 [P. C. § 8167], which provides:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, *or for the recovery of lands sold for delinquent taxes,* must be brought within three years from and after the date of the issuance of such treasurer's deed." (Italics ours.)

We have held squarely that § 162 is not applicable in a case where the tax title is acquired by a mortgagee of the property. *Maher v. Potter, supra; Oregon Mortgage Co. v. Leavenworth Securities Corp., supra.* If the statute is not applicable to a mortgagee, who usually does not agree to pay the taxes on the property, it is still less applicable to a vendee who has expressly agreed to pay such taxes. *Finch v. Noble, supra.*

In support of his contention, respondent cites the case of *Savage v. Ash,* 86 Wash. 43, 149 Pac. 325, which made no mention of the *Maher* and *Finch* cases, *supra,* nor, in turn, was mentioned in the *Oregon. Mortgage Co.* case, *supra.* It is true that the *Savage* case did hold that § 162 contained no exceptions and that its manifest purpose was "to fix a time beyond which a tax foreclosure proceeding cannot be questioned for any cause whatsoever." However, in that case, neither the holder of the certificate of delinquency, nor the purchaser at the tax foreclosure sale, had agreed or was obligated to pay the delinquent taxes. In the case at bar, upon the confessed facts, we have a different situation, for, as already stated, respondent had agreed to pay the taxes.

Finally, respondent contends that there was no legal duty resting upon him to pay the taxes, because, under the statute of frauds, the oral contract was unenforcible either as to the monthly payments to be made or as to the taxes to be paid. It is true that either party to the contract could have refused to complete it, and in such case neither of them could have compelled specific performance thereof by the other. But this is not an action for the specific performance of the contract; rather, is it an action for the recovery of the property upon renunciation of the contract, because the respondent alone failed to perform the agreement.

Respondent went into possession of the property under an agreement to pay the taxes. His only right of possession was under that agreement. By retaining possession, he affirmed the existence and validity of the contract. In taking the benefit of the contract he was bound by its cor-

responding obligations. He could not repudiate the contract and still retain possession of the property. In fact, he never did repudiate his agreement until after he had acquired the tax title, and his ability to obtain such title was the product of his own neglect or failure to pay the taxes as he had agreed. In speaking of respondent's "agreement" to pay the taxes, we are of course taking as true the facts confessed by the demurrer. What the actual facts are can only be determined by a trial of the case on its merits. Upon the admitted facts, however, we conclude that respondent, having agreed to pay the taxes and having retained possession of the property under that agreement, could not, by neglecting to pay such taxes and allowing the land to be sold in consequence of such neglect, obtain title by himself purchasing at the foreclosure sale, or by subsequently purchasing from one who had obtained title at such sale.

An argument is presented in the briefs as to the right of the appellant to recover rent from the respondent for the period during which he was in possession of the property. That question we will not discuss or decide, since it can more properly be considered and determined upon the hearing on the merits of the case.

The judgment is reversed, with direction to the trial court to overrule the demurrer.

SIMPSON, C. J., BEALS, JEFFERS, and GRADY, JJ., concur.