[No. 32022.   Department One.   September 15, 1952.]

F. L. Nethery *et al., Respondents,* v. Oscar Olson *et al.,
Appellants.*[1]

W. J. *Murphy,* for appellants.

John B. *Adams* and Theodore B. *Bruener,* for respondents.

[1]Reported in 247 P. (2d) 1011.

DONWORTH, J.—Plaintiffs instituted this action to obtain a declaration of forfeiture of a certain real-estate contract and a decree quieting title in them to the real property described therein against any claim of the defendants. After the defendants' demurrers were overruled, they answered separately, denying certain allegations of the complaint and affirmatively setting up the defenses of the statute of limitations and laches. Defendants' answers also contained a cross-complaint alleging adverse possession of the property for thirty-two years and praying that title be quieted in them. The affirmative matter alleged in the answers was put in issue by plaintiffs' reply, and a trial was had to the court sitting without a jury. The cause was taken under advisement, and a memorandum decision was thereafter rendered in favor of plaintiffs' contentions.

Defendants' motion for a new trial was heard and denied, and the court entered findings of fact, conclusions of law, and a decree awarding plaintiffs the relief sought. Defendants have appealed.

The controversy involves the interpretation of a real-estate contract entered into between respondents' predecessor as vendor and appellant husband as vendee on October 8, 1919, reading as follows:

"CONTRACT TO SELL AND PURCHASE LAND

"F. L. Campbell, a bachelor, as VENDOR, hereby agrees to sell, and Oscar Olson, as VENDEE, agrees to buy, the following described lands situate in Grays Harbor County, Washington, to-wit: [Here follows legal description of the property involved.] and the purchase price of said land is the sum of Twenty-five Hundred Fifty Dollars, to be paid as follows:

"The purchaser shall pay, as the obligations mature, the said Federal Laon [Land] Bank loan, promptly, without any default whatsoever, and time is of the essence of this clause and whole agreement.

"The Fifteen Hundred Fifty Dollars, shall be paid, and VENDEE so agrees, on or before five years after the date of this instrument, with interest thereon at the rate of Eight (8) per cent. per annum, payable semi-annually, without default, and failure to pay the interest as aforesaid, shall mature all payments at option of the VENDOR, who may then, at his option, elect to sue on the full payments, or may

cancel this agreement, and time is of the essence of this clause and agreement.

"This contract shall not be assigned without the prior written consent of the VENDOR attached hereto.

"All improvements made on said land, of whatsoever kind, shall become a part thereof.

"If the said VENDEE shall default in his agreement or payments as aforesaid, then all payments made may, at the option of the VENDOR, be retained as liquidated damages.

"THE VENDEE may go into possession of the land and so remain as long as he complies in every respect with this agreement, but he shall farm and tend said land and every part thereof, in a careful and husbandmanlike way, and shall not do or permit, waste or strip of said premises.

"Made in duplicate, Oct. 8, 1919.

> "F. L. Campbell (SEAL)
> "Oscar Olson    (SEAL)"

Appellants' seven assignments of error include the following:

"5. The trial court erred in signing plaintiffs' Findings of Fact and Conclusions of Law."

█ Under Rule 43, Rules on Appeal (34A Wn. (2d) 47), this assignment fails to bring the findings of fact before us for review because it does not refer to any finding by number and description. *In re Boundy's Estate*, 40 Wn. (2d) 203, 242 P. (2d) 165. The attempt to comply with this rule in the reply brief comes too late. *Hill v. Tacoma*, 40 Wn. (2d) 718, 246 P. (2d) 458. Therefore, the findings must be accepted as the established facts of the case. *Lopeman v. Gee*, 40 Wn. (2d) 586, 245 P. (2d) 183; *Jones v. Bard*, 40 Wn. (2d) 877, 246 P. (2d) 831.

The facts as found by the trial court may be summarized as follows:

Appellants took possession of the real property described in the contract shortly after its execution in 1919 and were in continuous possession thereof at all times since and still had possession when the decree was entered in 1951. They have paid the semi-annual payments on the mortgage held by the Federal Land Bank so that the principal has been reduced from $1,000 to approximately $220, and no delin-

quencies now exist in respect to the mortgage. Appellants have also paid all taxes levied against the property as they have become due, although the contract contained no provision regarding the payment of taxes.

Appellants have made no payments of principal or interest to the vendor as required by the contract, except $62 paid in the spring of 1920, which was credited to interest. The present unpaid balance payable on the contract is $1,550, plus any balance becoming payable under the mortgage.

The original vendor conveyed the property to respondent wife in 1942 and delivered the contract to her so that she succeeded to the rights of the vendor thereunder. (For convenience, we shall refer to respondents and their predecessor as the vendor.)

On January 11, 1951, respondents served on appellants a notice of forfeiture of the contract and tendered them a warranty deed to the property upon condition that appellants, within sixty days, pay the principal and interest due and past due under the contract. Appellants refused to make such payment and refused the tender of the deed, which, at the time this action was commenced, was delivered into the registry of the court.

The court also found that at no time had appellants held possession of the property adversely to respondents or their predecessor in interest.

The decree entered by the court contained the following provisions:

"ORDERED, ADJUDGED AND DECREED that the plaintiffs have judgment against defendants and against the marital community composed of the defendants, forfeiting the real estate contract described in the complaint herein, and that the defendants have no right, title or interest in and to said property, and for restitution of the premises covered by said contract to the plaintiffs, and that the title to the real property covered by said contract be and the same hereby is quieted in the plaintiffs. . . .

"IT IS FURTHER ORDERED that if the defendants shall within sixty days after the entry of this Judgment and Decree, pay or cause to be paid to the plaintiffs or into the Registry of this Court for the use and benefit of the plaintiffs, the sum

of $1,550.00 plus 150.00 attorney fees and the costs of suit to be taxed, plaintiffs will be required to convey the said real property to the defendants. In the event, however, of the failure of the defendants to make such payment, the plaintiffs will be granted judgment in accordance with this Judgment and Decree."

Appellants contend that they acquired title to the property by adverse possession for more than ten years under Rem. Rev. Stat., § 156 (*cf.* RCW 4.16.020). This contention is based on the fact that no principal or interest has been paid on the real-estate contract since 1920 and upon appellants' claim that at all times since then they have been in open, notorious, continuous, and hostile possession of the property adversely to the vendor.

The original possession of the property by appellants was under the terms of the real-estate contract. There was never any surrender of the original possession by appellants to the vendor. At what time did the character of their possession change from one by the consent of the vendor to one adverse to the vendor?

The rule that a vendee is estopped to deny his vendor's title was recognized by this court in *Finch v. Noble*, 49 Wash. 578, 96 Pac. 3, where the vendee in possession under a contract had acquired title from a purchaser at a tax sale (although there was no collusion between them). We held that the vendee could not assert such title against the vendor, saying:

"The general rule that a tenant or purchaser in possession is estopped to deny the title of his landlord or vendor and will not be permitted to acquire a title adverse to him exists in one form or another in all the states. This general rule is conceded by the appellants, so that we are only concerned with the limitations upon the rule and its application to the facts before us."

In *Slocum v. Peterson*, 131 Wash. 61, 229 Pac. 20, 40 A. L. R. 1071, we held that a vendee in possession of property could not acquire a paramount outstanding title thereto and assert it against his vendor without first surrendering

possession. After quoting from 27 R. C. L. 547, we commented as follows:

"A critical examination of this quotation and the authorities upon which it is rested will show, we think conclusively, that this view of the law has no application except where the purchaser has gone into possession of the land under the sale contract. A purchaser so in possession cannot assert a title acquired by him, adverse to his vendor, while he remains in possession under the sale contract, because his remaining in possession under the sale contract is wholly at variance with the rescission of or the non-existence of such contract, and the purchaser will, while in such possession, no more be permitted to so challenge or impair the title of his vendor with a view of defeating the vendor's title than a tenant in possession will be permitted to challenge or impair the title of his landlord."

More recently, in *Stephens v. Kesselburg,* 19 Wn. (2d) 427, 143 P. (2d) 289, where the facts were somewhat different from those presented in the instant case, we again referred to this general rule in the following language:

"It is the general rule in this state that a tenant or purchaser in possession of property is estopped to deny the title of his landlord or vendor and will not be permitted to acquire a title adverse to him. *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3, 126 Am. St. 880; *First Nat. Bank v. Mapson,* 181 Wash. 196, 42 P. (2d) 782. That rule, however, does not prohibit a tenant from purchasing the property at a judicial or execution sale, because, by purchasing at such sale, he is not disputing his landlord's title as of the time when the tenancy was created, but is acquiring a title which subsequently arose."

This rule is broadly stated in 55 Am. Jur. 800, Vendor and Purchaser, § 375, to apply so as to estop a vendee in possession under a real-estate contract from denying his vendor's title. The author there states:

"It is a universally recognized rule that one who has entered into the possession of land under an executory contract of sale is estopped from denying or questioning his vendor's title for the purpose of defeating the agreement or the rights of the vendor thereunder. The principle upon which the rule rests is that the purchaser is estopped to deny the title of the vendor, because he acknowledged it and

gained possession by his purchase, and he ought not then in conscience, as between them, be allowed to enjoy the fruits of his contract and not pay the full consideration. It is not the contract alone which estops the purchaser, but the estoppel arises from the purchaser's having obtained the possession of the land on the faith of the contract. The rule is said to result from the relation which it has been found expedient to establish between vendor and purchaser. As pointed out above, the relation between the vendor and the purchaser who is let into possession, although not technically that of landlord and tenant, is somewhat similar to that relationship, and it is a well-settled general rule that a tenant cannot during the existence of the relation of landlord and tenant gainsay his landlord's title. The vendee in a contract for the sale of land, having recognized the vendor's title by entering into the contract and taking possession under it, can do nothing to the prejudice thereof so long as the relation exists; he is estopped to deny the vendor's title without having first surrendered the possession, and cannot even set up a prior title in himself without having first surrendered the possession acquired by virtue of the contract, where there has been no mistake or imposition, or take advantage of the existence of an outstanding title disclosed by the vendor's own evidence. A purchaser while in such possession will no more be permitted to challenge or impair the title of his vendor with the view of defeating the latter's title than a tenant in possession will be permitted to challenge or impair the title of his landlord. This estoppel is applied not only where the vendor sues in ejectment to recover possession on account of a default in the payment of the purchase money, but also where the vendor sues to recover the agreed price. The purchaser cannot in such a case retain the possession obtained by virtue of the contract, thus treating the contract as subsisting and at the same time defend by showing a want of title in the vendor."

But the further contention is made that, even if prior to 1933 the appellants' possession had not become adverse to the vendor, appellant husband told the vendor (respondents' predecessor in interest) in January, 1933, that he would not pay any principal or interest on the contract, and that, consequently, thereafter their possession of the property was adverse. Thus, it is argued, respondents' cause of action

was barred ten years later (in 1943) by the statute of limitations. This action was not commenced until 1951.

The trial court made no finding regarding this incident, but the testimony of appellants' son as to the meeting with the vendor in 1933 is as follows:

"Mr. Campbell [the vendor] mentioned something about the land and settling up. My father told him he had consulted a lawyer, and the lawyer had told him the case was too old, and that he thought my father should be in possession of the property. Q. What else was said? A. Well, they went on talking, and my father said, 'I think when I pay off the farm loan it is as much as the farm is worth.' He said the cleared part was bad and the property wasn't worth any more than the mortgage amounted to. Q. What kind of land is that? [Objection by respondents' counsel sustained.] MR. MURPHY: . . . I think that is all. Q. Just a minute. What did Mr. Campbell say after your father told him he would just pay off the loan? A. I don't recall, but he didn't . . . (Interrupted) MR. ADAMS: Just a minute. I object. He just testified he didn't recall."

Appellant wife and their daughter gave similar testimony.

■ This testimony, considered *in toto,* is not sufficient to convert appellants' possession from one under the contract to a possession adverse to the vendor. There was no delivery of possession to the vendor nor such a defiance of the vendor's rights in the premises as would enable appellants to successfully assert title against the vendor in 1943 under § 156, *supra.* Furthermore, respondent husband testified that appellant husband between 1942 and 1948 made several promises to pay the balance. This is inconsistent with a claim that he had acquired title by adverse possession in 1943.

There is another reason for affirming the decree of the trial court.

■ Appellants, by continuing the payments to the Federal Land Bank on the mortgage, were, in legal effect, making payments in compliance with the real-estate contract. Such compliance rendered it impossible for appellants to hold the property adversely to the vendor, because they had

made continuous payments on the mortgage from 1919 to 1951 (except for a brief period in 1933).

Appellants strenuously contend that the obligation to make the mortgage payments is severable from the obligation to pay the sum of $1,550 on or before October 8, 1924, with eight per cent interest payable semi-annually.

The contract provided that the purchase price of the land was $2,550, to be paid as follows:

(a) $1,000 by the vendee's paying the Federal Land Bank mortgage promptly as the obligations thereunder matured;

(b) $1,550 by the vendee's paying that sum to the vendor on or before five years from date of the contract, with eight per cent interest thereon payable semi-annually.

It seems to us that the payments which appellant made on the mortgage were made pursuant to the real-estate contract with the same effect as though the vendee had paid the money to the vendor who then paid it to the Federal Land Bank.

We hold that the obligation to pay on the mortgage is not severable from the obligation to pay the $1,550 to the vendor. Both together constituted the consideration for the sale of the land. It follows that appellants could never have been in possession of the property adversely to the vendor because they have been continuously making payments on the mortgage pursuant to the contract. They cannot be permitted to recognize the existence of the contract by making payments under it and at the same time claim to repudiate it by asserting that they have acquired title adversely to its provisions.

What we have already said herein regarding the statute of limitations also disposes of appellants' defense of laches.

Appellants' assignments of error No. 1 to No. 6, inclusive, are without merit.

Considering now appellants' last assignment (No. 7), which is that the trial court erred in allowing respondents an attorney's fee of $150, we find in the last paragraph of the decree a provision that appellants are given a period of sixty days within which to pay into the registry of the court

for the use of appellants "the sum of $1,550 plus $150 attorney fees" plus taxable costs.

■ There being no provision in the real-estate contract for the payment of attorney's fees, none may be allowed. This assignment of error is well taken, and the decree is hereby modified by striking therefrom the words "plus $150 attorney fees." As so modified, the decree is affirmed.

The period of sixty days provided for in the decree having expired, such period shall begin to run from the filing of the remittitur in the superior court.

Respondents will recover their costs on this appeal.

It is so ordered.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

November 6, 1952. Petition for rehearing denied.