[No. 33047. Department Two. July 14, 1955.]

ALASKA AIRLINES, INC., *Respondent,* v. F. H. MOLITOR
et al., *Appellants.*[1]

*G. Bradley Dalton,* for appellants.

*Allen, DeGarmo & Leedy,* for respondent.

[1]Reported in 285 P. (2d) 893.

MALLERY, J.—The plaintiff owned certain buildings located on Merrill Field, which is an Alaskan airport owned by the Federal government and managed by the city of Anchorage.

On April 7, 1953, plaintiff contracted to sell the buildings to defendants. Paragraph No. 3 of the contract provides the terms of payment. It reads:

"Buyer agrees to pay Seller $45,000.00 in lawful currency of the United States as follows: $12,000.00 upon notice being received of approval by the City Council of transfer of use permit as aforesaid, and before completion of assignment by Seller the same to be deposited at the Seattle First National Bank, Main Branch, Seattle, Washington, in escrow, which same shall then be paid by the said Bank as escrow agent to ALASKA AIRLINES, INC., in the amount of $1,000.00 beginning on the first day of the first month after notice of approval has been received as aforesaid, and on the first day of each month thereafter, until the entire $12,000.00 has been paid. The balance of the purchase price remaining after credit for any sums paid from said $12,000.00 and from any other sums which have been paid and which may remain in escrow as hereinafter set forth, shall be paid to the Seller at the Seattle First National Bank within fifteen days of transfer of title to Buyer including evidence of release of all liens or encumbrances upon the aforedescribed property. *Buyer at his option may, in writing and by deposit of $12,000.00 in said escrow on or before the end of the twelfth (12th) month, extend the provisions of this paragraph from year to year for a total of 45 months,* at which time all of seller's right, title and interest to the property aforesaid shall vest in Buyer. However, Seller must place a good and valid transfer of all of its right, title and interest in said property in escrow with the Seattle First National Bank at time of completion of assignment to be given to Buyer when he has completed payments on the purchase price." (Italics ours.)

The defendants deposited the required twelve thousand dollars in the bank agreed upon, and went into possession of the premises.

The United States internal revenue service notified plaintiff, by letter dated May 26, 1953, that the accrued tax liens against the property would be released, if the sum of

twenty-two thousand five hundred dollars were paid immediately.

On June 10, 1953, plaintiff wrote the bank that the defendants were obligated, under the terms of the contract, to pay the balance of the purchase price and instructed it, upon receipt of the entire forty-five thousand dollars, to pay the accrued tax liens. On the same day, plaintiff informed defendants of what it had done, which it considered as proof of release of all liens and tender of title to the property.

The defendants denied plaintiff's right to have the accrued tax liens paid out of the purchase price, and, on June 30, 1953, instructed the bank not to disburse any funds received from them, and demanded that plaintiff make a showing of its ability to transfer clear title to the property within the period required by paragraph No. 6 of the contract, which provides:

". . . if Seller is unable to transfer clear title to the property subject to this Agreement, within ninety days following the execution of this Agreement, then Buyer may, at his option, *declare this Agreement cancelled.* . . ." (Italics ours.)

Plaintiff's response to defendants' demand was the commencement of this action for possession of the property.

Defendants took the position that plaintiff had not shown its ability to transfer clear title to the property, and served plaintiff with notice of cancellation of the contract, coupled with a demand that plaintiff remove its buildings from the airfield by July 24, 1953. This demand for removal was predicated upon defendants' claim of right to an adverse possession of the land, because they had, after taking possession, procured the issuance of a new "use permit" from the city of Anchorage running directly to a corporation they had formed for the purpose of receiving it.

Plaintiff, apparently acquiescing in the cancellation of the contract by defendants, then sought a court order to recover possession of the buildings and the land upon which they stood. Defendants successfully defeated this attempt, asserting want of jurisdiction of a Washington court over land in Alaska.

When the cause came on for trial, plaintiff amended its complaint by adding a cause of action for the value of the property, predicated upon the cancellation of the contract by defendants after the commencement of the action.

The trial court entered judgment for plaintiff, and defendants appeal.

Appellants contend the trial court erred in finding that respondent's tender of title complied with the terms of the contract. We agree. This gave appellants a right to cancel the contract, which they did. This, however, did not give appellants the right, *after cancellation,* to keep the property without paying for it.

The law applicable to the rights of the parties after cancellation of a contract, is stated in 55 Am. Jur. 730, Vendor and Purchaser, § 290:

"As a general rule, if, after the contract is made, it is ascertained that the title of the vendor is not good, the purchaser must either rescind the contract and restore possession, or accept the title as it is and pay the purchase price. He cannot, while declining to pay such price on account of the defect in the title, hold possession of the property until the title shall be perfected. While one remains in possession of land under a contract for the purchase thereof, he is estopped to deny the title of his vendor."

Our question is whether or not appellants' demand that respondent remove its buildings from the airfield, was a sufficient restoration of the property in question to excuse payment of the agreed purchase price.

Appellants had obtained possession of the land from respondent. The possession thus obtained enabled them to procure a subsequent "use permit" from the city of Anchorage, in the name of the corporation they had formed to receive it. In demanding that respondent remove the buildings from the land in question, appellants are asserting an adverse title to the land and are denying that the fact of having obtained possession of it from respondent has any significance. 55 Am. Jur. 800, Vendor and Purchaser, § 375, states:

"*One who has entered into the possession of land under an executory contract of sale is estopped from denying or questioning his vendor's title for the purpose of defeating the*

*agreement or the rights of the vendor thereunder.* The principle upon which the rule rests is that the purchaser is estopped to deny the title of the vendor, because he acknowledged it and gained possession by his purchase, and he ought not then in conscience, as between them, be allowed to enjoy the fruits of his contract and not pay the full consideration. . . . The vendee . . . having recognized the vendor's title by entering into the contract and taking possession under it, can do nothing to the prejudice thereof so long as the relation exists; he is estopped to deny the vendor's title without having first surrendered the possession, and cannot even set up a prior title in himself without having first surrendered the possession acquired by virtue of the contract . . . or take advantage of the existence of an outstanding title disclosed by the vendor's own evidence. A purchaser while in such possession will no more be permitted to challenge or impair the title of his vendor with the view of defeating the latter's title than a tenant in possession will be permitted to challenge or impair the title of his landlord. This estoppel is applied not only where the vendor sues in ejectment to recover possession on account of a default in the payment of the purchase money, but also where the vendor sues to recover the agreed price. The purchaser cannot in such a case retain the possession obtained by virtue of the contract, thus treating the contract as subsisting, and at the same time defend by showing a want of title in the vendor." (Italics ours.)

■ In *Slocum v. Peterson,* 131 Wash. 61, 229 Pac. 20, 40 A. L. R. 1071, we held that a vendee in possession of property could not acquire a paramount outstanding title thereto and assert it against his vendor without first surrendering possession. We said:

"The purchaser will, while in such possession, no more be permitted to so challenge or impair the title of his vendor with a view of defeating the vendor's title than a tenant in possession will be permitted to challenge or impair the title of his landlord."

In *Nethery v. Olson,* 41 Wn. (2d) 173, 247 P. (2d) 1011, we said:

"The rule that a vendee is estopped to deny his vendor's title was recognized by this court in *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3, where the vendee in possession under

a contract had acquired title from a purchaser at a tax sale (although there was no collusion between them)."

■ Appellants' demand upon respondent to remove the buildings from the land was not a restoration of the property contemplated by the contract. They are, therefore, liable for the agreed purchase price.

Appellants contend that respondent's action was premature. It is true the first complaint was premature, because appellants' option to pay for the property at the rate of one thousand dollars a month for forty-five months, was still in effect. By the time the cause went to trial, however, appellants had canceled the contract and refused to pay for the property or to return it. An amended complaint for the value of the property, interposed at the time of trial, was not premature. The judgment is upon the amended complaint.

The respondent is entitled to judgment for the amount of the agreed purchase price, which was forty-five thousand dollars *for the property free and clear.*

We can not determine from the record before us what, if any, liens were upon the property at the time appellants took possession, or the amount of money, if any, appellants have been or will be called upon to pay in satisfaction of them. The proper amount of the judgment can not be ascertained without these facts.

The cause is remanded for the taking of evidence as to the liens and the entry of a modified judgment in accordance with this opinion. Neither party shall recover costs.

HAMLEY, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

---

August 30, 1955. Petition for rehearing denied.