HENRY STONG v. DANIEL W. LANE.[1]

October 21, 1896.

Nos. 10,321—(217).

**Contract—Rescission for Mistake—Estoppel.**

If there be a meeting of the minds of both parties upon the terms of a contract, and those terms are free from ambiguity, and there be no fraud or misrepresentation, a mistake of one of the parties alone, resting wholly in his own mind, as to the identity of the subject-matter of the contract, is no ground for rescission. But, in order to create a binding contract, there must be a meeting of the minds of the parties upon the terms of the contract. *Held*, that the evidence in this case justified the conclusion that the minds of the parties never in fact met upon the terms of their contract; also, that there was no such subsequent change of position on part of the defendant on the faith of the supposed contract as estopped the plaintiff to claim a rescission.

[1] Reported in 68 N. W. 765.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $104.08. Affirmed.

*G. D. Emery*, for appellant.

*John H. Robertson* and *William W. Bartlett*, for respondent.

MITCHELL, J. While the amount in controversy is small, the principle involved is important. The facts are practically undisputed.

The plaintiff being desirous of purchasing a lot as a site for a dwelling, a mutual acquaintance of the parties (but for whose acts defendant was in no way responsible) pointed out to plaintiff a lot which he said defendant had for sale. The lot thus pointed out fronted east on Third avenue south, being the second lot north from Franklin avenue, in Minneapolis. The party was mistaken. The lot which defendant had for sale (as agent for the owner) was the one directly opposite on the other side of Third avenue, being the side "Judge Jones' house is on." This lot fronted west. It was also the second lot north from Franklin avenue, but, as already stated, on the opposite side of Third avenue from the one pointed out to plaintiff. Thereupon plaintiff went to see defendant. The precise words by which he opened negotiations do not clearly appear, but their substance was that plaintiff either asked defendant if he had for sale a lot on Third avenue south, or stated that a lot had been pointed out to him by this mutual acquaintance as one that defendant had for sale, and inquired the price. The evidence is undisputed that defendant told plaintiff that he had for sale the lot on Third avenue south, being the second lot north of Franklin avenue, and "on the same side of the street that Judge Jones' house was on." Nothing was said as to whether the lot fronted east or west. It is undisputed that Judge Jones' house is on the east side of Third avenue, and hence that a lot on that side would front west.

Without defendant's giving any further or more definite description of the lot, and without plaintiff making any further inquiry as to its description and location, the plaintiff proceeded to negotiate as to price. The result was a verbal bargain of sale and purchase for $2,500, of which plaintiff paid down $100, the balance to be paid

when the title was ascertained to be satisfactory, and upon defendant's procuring the proper deed.    It appears that defendant's arrangement with the owner of the lot was that he was to have as his commission all he sold the lot for over $2,400.    But, without waiting for the sale to plaintiff to be consummated, defendant immediately went to the owner, and himself bought the lot for $2,400, paying on the purchase price the $100 which he had received from plaintiff, and taking a deed running directly to the plaintiff.    Very soon afterwards, on submitting to his counsel the abstract of title furnished by the defendant, plaintiff discovered that the lot described in it was not the lot which had been pointed out to him, and which he supposed he was buying.    He then informed the defendant of his mistake, and demanded back his $100, which defendant refused to pay, but tendered a deed which plaintiff refused to accept, and then brought this action to recover back the $100.

The evidence is undisputed that plaintiff was laboring under an honest mistake, and supposed he was buying the lot which had been pointed out to him.    It is also undisputed that defendant was equally honest in supposing he was selling the lot on the other side of the street, for which he was agent, and that he had no notice of plaintiff's mistake.    It will be observed that the description of the two lots was the same, except the reference to the "side of the street that Judge Jones' house was on," which was applicable to the lot defendant had for sale, but inapplicable to the one which plaintiff supposed he was buying.    It is familiar law that an honest mistake of one of the parties may be good ground for refusing specific performance, and leaving the other party to his action for damages, while it would be no ground for a rescission of the contract.    But the question here is whether, upon the facts, plaintiff is entitled to a rescission, for that is, in effect, what he is asking for in seeking to recover the $100.

The trial judge instructed the jury to the effect that, to constitute a contract, the minds of the parties must have met,—that is, as applied to this case, both parties must have had in mind the same lot; that if one of them referred to one lot, and the other to another lot, then there was no meeting of the minds of the parties, and hence no contract.    Considered as a statement of the general rule of law, this might be incomplete and even incorrect.    If there be

a meeting of the minds upon the terms of the contract, and those terms are free from ambiguity, and there be no fraud or misrepresentation, a mistake of one of the parties only, resting wholly in his own mind, as to the identity of the subject-matter of the contract, was never held in any well-considered case to be a ground for rescission. If it was, then all contracts would rest on a very uncertain foundation.

Undoubtedly, in order to create a contract, the minds of the parties must meet and agree upon the expressed terms of the contract. Thus, in Rupley v. Daggett, 74 Ill. 351, one party offered to sell a horse for $165; the other party understood him to say $65. It was held that there was no contract. To the same head may be referred cases where a person, by mistake, enters into a different kind of agreement from that which he intended to make or supposed he was making; as where he signed a bond supposing it to be a mere petition, or which he supposed he was signing merely as a witness. See Thoroughgood's Case, 1 Coke, 435; Foster v. MacKinnon, L. R. 4 C. P. 704. To the same general principle may be referred those cases where, after the parties have apparently agreed to the terms of a contract, it is made to appear that there was a latent ambiguity in an essential word, by which one of the parties meant one thing, and the other a different thing, the essential word being applicable to both. See Raffles v. Wichelhaus, 2 Hurl. & C. 906; Kyle v. Kavanagh, 103 Mass. 356. In all these cases it was held there was no binding contract, because the minds of the parties had never met on its terms. But suppose, in Raffles v. Wichelhaus, supra, there had been but one ship named Peerless, and hence no latent ambiguity in the terms of the contract; the defendant could not have been released from his contract merely because he had in mind, and supposed he was contracting with reference to, another ship of a different name. This distinction is very clearly brought out by both Mr. Anson and Mr. Lawson in commenting on this very case. Anson, Cont. 130; Lawson, Cont. § 214. We call attention to this distinction because we do not wish to be understood as indorsing the erroneous meaning not infrequently attached to the legal maxim that, to create a contract, the minds of the parties must meet and "agree on the same thing in the same sense."

Returning now to the facts of the present case, we note, in the first

place, that this contract was not enforceable, because within the statute of frauds. Defendant or his principal might have repudiated it, and returned the $100. This of itself is no ground for rescission, but we think it furnishes a reason why the rules of law on the subject should be somewhat liberally applied in favor of the plaintiff.

Had the parties, in their contract, deliberately agreed on a formal description of its subject-matter, the mere fact that plaintiff was mistaken as to the lot to which that description applied, and had in mind another lot of a different description, would be no ground for a rescission. But in this case, while the description given by the defendant was probably sufficient in law to identify the property, it was an unusual and exceedingly informal one, and one very liable to be misunderstood. It was in one sense incomplete, for on its face it did not appear on which side of the street Judge Jones' house was, which was the only thing contained in the description to distinguish the one lot from the other. The other elements of the description being common to both lots, and the plaintiff naturally assuming that the lot referred to was the one that had been pointed out to him, the reference to Judge Jones' house was not calculated to make any particular impression on his mind, as being a material part of the description. Again, the description given by the defendant was never expressly agreed to by the plaintiff. So far as it could be said to have been assented to at all, it was so only impliedly, by plaintiff's proceeding to negotiate as to price, which he evidently did supposing that the lot to which defendant alluded was the one which had been pointed out to him on the ground. Therefore, under the particular facts of this case, it may be fairly said that the minds of the parties never really met or agreed on the words or the terms of the contract, and hence that there never was any binding agreement.

The main contention of the defendant, however, is that, on the faith of the agreement, he had changed his situation by paying over the money to the owner of the lot, and therefore plaintiff is estopped to allege his mistake and claim a return of his money. If defendant had continued to occupy the relation of agent, and, as such, paid over to his principal the $100 as the money of the latter, this contention would be correct. But this is not what defendant did.

He terminated his agency, and converted himself into a principal, by purchasing the lot, and applying the money, as his own, in part payment of the purchase price. We cannot see that, from a legal standpoint, he occupies any different position than he would if he had appropriated the money to any other use of his own, as, for example, buying a horse or paying a debt. We find no prejudicial error either in the rulings of the court in the admission of evidence or in his charge to the jury.

Order affirmed.