# CIRCUIT COURT OF BALTIMORE CITY.

Filed February 28, 1912.

W. STEWART DIFFENDERFFER
VS.
FRITZ KNOCHE.

*Thomas Mackenzie* for complainant.
*Wm. C. Smith* for defendant.

BOND, J.—

The testimony shows a purchase by the defendant under mistake on his part as to the identity of the property, without any misleading representations or inducements by the plaintiff.

It appears from the evidence that a confectioner, Doebereiner, whose store was at the corner of Lovegrove alley and North avenue, had use for a stable on Lovegrove alley, in the rear and south of his store, but had been unable to secure it at the price of $4,000, which he was willing to pay. The defendant, Knoche, a friend of Doebereiner's was aware of Doeber-

einer's wish, and when, as he thought, an opportunity offered, he evidently determined to purchase at a price under $4,000 and make resale, or, at least, transfer the sale to Doebereiner at a profit.

Knoche was familiar with that stable, and knew it was owned by a Mr. Diffenderffer, of Ross & Company, a firm with which he, Knoche, had had other business dealings. When, then, negotiations were opened later with the plaintiff, W. Stewart Diffenderffer, a member of the firm of Ross & Company, for the sale of his stable, No. 1801 Lovegrove alley, in the block south from North avenue, the defendant made no investigation concerning the identity of the property, and declined to examine it further before purchasing.

But there were two members of the firm of Ross and Company named Diffenderffer, and the one who owned the stable Doebereiner wanted was Mr. Charles R. Diffenderffer, a brother of the plaintiff, and the latter stable was No. 1805 Lovegrove alley. The two stables were closely similar in appearance, and were separated by another stable, No. 1803. The transom bearing the number 1801 had apparently been broken out; but the numbers 1803 and 1805 were clearly marked on the other two buildings. On No. 1801 there was a sign reading "For Sale or Rent, apply to W. S. Diffenderffer, 109 Commerce Street," and on 1805 there was another reading "For Sale or Rent, apply to C. R. Diffenderffer, 109 Commerce street."

The defendant signed an agreement or acknowledgement of purchase, reading: "I have this day purchased from W. Stewart Diffenderffer the stable, in fee, 1801 Lovegrove alley, for the sum of four thousand dollars," &c.

The differences between the two buildings were passed unnoticed by the defendant, he having apparently dismissed all question of identity from his mind, once he had heard it was Mr. Diffenderffer's stable on Lovegrove alley that was offered to him. The mistake was discovered after the agreement was signed.

In such a case the first question which arises is whether, in view of the difference in the subject matter which the parties had in mind, there was any binding agreement at all. I think there was. Both parties distinctly, in writing, mentioned 1801 Lovegrove alley as the property agreed to be sold; and this would be sufficient to constitute a definite contract, considering that point alone, as it would be considered at common law.

In the leading case of Raffles vs. Wichelhaus, 2 H. & C., 906, in which cotton was ordered shipped on a vessel named "Peerless," and each party had in mind a different vessel of that name, there was no contract effected. "But," says Anson on Contracts, Section 186, "if Wichelhaus had meant a ship of a different name, he would have had to take the consequences of his carelessness in not expressing his meaning properly.

"Nor could he have avoided the contract if its terms had contained such a description of the subject matter as would practically identify it." Here, Knoche, having in mind 1805 Lovegrove alley, or not knowing exactly what was the number of the property he meant to buy, specifically agreed to buy 1801 Lovegrove alley; and he must stand bound to it.

Van Praagh vs. Everidge (1902), 2 Ch. 266, Cf. Collins, M. R., on appeal (1903), 1 Ch. 434.

Strong vs. Lane, 66 Minn., 94.

But it is not every binding contract for the sale of real property that will be enforced specifically in equity. That remedy is an extraordinary one, and there is some latitude of discretion vested in the courts upon applications for it; and mistake by the defendant alone, in regard to a vital part of his contract, may require the court to deny the remedy, if it would be harsh and inequitable to compel the defendant so to fulfill the contract.

On the other hand, the defendant should not be relieved of a mistake resulting from mere carelessness or negligence on his part. Such is the rule settled by the authorities.

Kerr on Fraud and Mistake, 4 Ed., pages 478-480.

6 Pomeroy's Equity Jurispr., Sec. 783.

15 L. R. A. (N. S.), 81 note.

Malin vs. Freeman, 6 L. J. Ch., 133.

Tamplin vs. James, L. R. 15 Ch. D., 215.

Van Praagh vs. Everidge (1902), 2 Ch., 266, 271.

Mansfield vs. Sherman, 81 Me., 365.

Kelley vs. York Cliffs Co., 94 Me., 374.

Hess vs. Evans, 15 Atl. Rep., 310 (N. J. Ch.).

Cawley vs. Jean, 189 Mass., 225.

In some of these cases, too, it is urged strongly that to accept such a unilateral mistake as a defense to specific performance may open up an easy escape from the ordinary results of deliberate written contracts, lessening their value, and encouraging perjured defenses.

Most of the courts which decided the cases cited above would, by parity of reasoning, I think, have refused specific performance on the facts presented here. In Tamplin vs. James, and Van Praagh vs. Everidge (1902), 2 Ch., 266, the facts were closely similar to those in the case at bar, and the purchasers were compelled to complete their purchases.

Such are the guiding principles furnished by the authorities. But this case seems almost to stand balanced on the line of demarcation they drew. There was some carelessness on Knoche's part; although the conditions were unusually apt for bringing about a mistake, with slight carelessness to aid. On the other hand, the property is one that Knoche had no use for, and it will cause some hardship to him to compel him to take it.

The courts in those two cases discussed the point more thoroughly than it has been discussed in American jurisdictions, and their arguments are compelling. They both, however, remark that the element of hardship was not, in the particular case, such as to make it unjust and inequitable to compel performance, inasmuch as the purchaser in each case appeared to be so situated that he could make use of the property, or could arrange to avoid any considerable hardship. One purchaser, for instance, (Tamplin vs. James), was engaged in the business of developing such property as he bought. Knoche does not appear to have any such escape from the hardship, or means of mitigating it.

I have come to a conclusion in this case only after much hesitation, and with much difficulty. Keeping in mind, as a general rule, the desirability of holding parties to their clearly expressed contracts, and of shutting out pleas of more blunder and mistake, still, it must be recognized that there are cases in which, even though there be some carelessness, the hardship to the purchaser in holding him to the consequences of his mistake should, under the particular circumstances, stay the hand of the court of equity with its extraordinary remedy of specific performance.

I have concluded that this case is within that category. The bill will therefore be dismissed.

Each of the plaintiff's five exceptions to the evidence is overruled.