## HOME INS. CO. v. LEWIS et ux.

### No. 1288.

Court of Civil Appeals of Texas. Waco.
Dec. 15, 1932.

Seale & Seale, of Centerville, and Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for plaintiff in error.

M. L. Bennett, of Normangee, for defendants in error.

ALEXANDER, J.

J. N. Lewis and wife brought this suit against the Home Insurance Company to recover the amount claimed to be due them as fire insurance on a stock of merchandise. The case was tried before a jury, and resulted in a verdict and judgment for the plaintiffs, and the defendants sued out a writ of error.

Giving the evidence that construction most favorable to the plaintiffs, as we are required to do, the facts are as follows: On August 10, 1929, the defendant insurance company issued and delivered to the plaintiffs a fire insurance policy on the stock of merchandise in question, being a stock of millinery goods. Mrs. Lewis had charge of the millinery store, and the policy was payable to her. It expired on August 10, 1930. The plaintiffs also carried a fire insurance policy on their residence, which policy was payable to J. N. Lewis. This policy was issued by another company, and expired about October 27, 1930. Both of these insurance companies were represented by the same agent—Mr. Ford. Mr. Ford did not write either of the original policies, but had succeeded to the agencies after they were delivered. On August 10, 1930, on the date the old policy on

the stock of merchandise expired, Mr. Ford, as agent for the defendant, wrote a new policy on the stock of merchandise, and carried it to the store for the purpose of making delivery and collecting the premium. He handed it to Mrs. Lewis, and advised her that the old policy expired on that day. Mrs. Lewis testified that she did not accept the new policy. She further testified: "He (the agent) brought the policy in and I said I didn't have the money; that I would have to see Mr. Lewis. * * * He took the policy and went away." She further testified that she later spoke to her husband about the matter, and he agreed to see the agent and take care of it. The agent kept the policy in his office for about ten days, and, not having heard from Mr. Lewis, returned it to the insurance company for cancellation. In the latter part of October, 1930, either on the same day, or just a few days before the policy on the residence expired, the agent met Mr. Lewis on the street and said, "your policy is about to expire and do you want it renewed?" Mr. Lewis testified, "I told him certainly I did, I had never cancelled an insurance policy." The agent advised him that he had written a new policy and had it in his office. Mr. Lewis said, "Keep the policy and I will come and see you about it." At that time the agent had written a new policy on the residence and had it in his office. A few days after said street conversation between Mr. Lewis and the agent, the store building burned, and the stock of merchandise was destroyed. At the trial of the case, Mr. Lewis contended that at the time of said street conversation he and the agent had in mind a renewal of the policy on the stock of merchandise, and that the company through said agent thereby agreed to renew the insurance on the merchandise under the same terms as the old policy, and that by reason thereof plaintiffs were entitled to recover. The agent testified that he had in mind and intended a renewal of the policy on the residence.

## Opinion.

The plaintiffs were seeking to recover on an oral contract for the renewal of a fire insurance policy. They alleged that they had previously carried a policy of insurance on said property which expired August 10, 1930, and that on or about said date the defendant, through its agent, orally agreed to reinsure said property for another year on the same terms that it had theretofore been insured. They did not, however, allege that they had paid, or agreed to pay, any consideration for such contract to reinsure. The defendant directed a general demurrer to the petition, and here assigns as error the action of the court in overruling the demurrer.

Where one sues to recover on an oral contract to insure property, the burden is on him to allege and prove that he has paid, or agreed to pay, some consideration for the contract of insurance. Since the petition in this case did not allege such consideration, it was subject to the general demurrer, and the court erred in overruling same. Couch on Insurance, vol. 8, § 2223; Texas Mutual Life Ins. Co. v. Davidge, 51 Tex. 244; Swift v. Central Union Fire Ins. Co., 279 Mo. 606, 216 S. W. 935; Royal Insurance Co. v. Eggleston, 19 Ala. App. 638, 99 So. 828; 10 Tex. Jur. 498; J. M. Radford Grocery Co. v. Jamison (Tex. Civ. App.) 221 S. W. 998, par. 4; Terrell, Atkins & Harvin v. Proctor (Tex. Civ. App.) 172 S. W. 996, par. 2; Tumlinson v. York, 20 Tex. 694.

The defendant further contends that the evidence was insufficient to show a contract to renew the policy of insurance, and that the court should have given an instructed verdict in its behalf. If the company ever made an agreement to renew the policy on the stock of merchandise, it was by virtue of the street conversation between the agent and Mr. Lewis. The language used by the parties in said street conversation is uncertain and ambiguous. There is nothing therein contained which makes it necessarily applicable only to a renewal of the policy on the stock of merchandise. Such language is certainly as applicable to a renewal of the policy on the residence as it is to a renewal of the policy on the merchandise. The undisclosed intention or understanding of the parties therefore became a material inquiry. The rule in such cases, as stated in the Restatement of Law of Contracts, § 71, is as follows:

"Except as stated in §§ 55 and 70, the undisclosed understanding of either party of the meaning of his own words and other acts, or of the other party's words and other acts, is material in the formation of contracts in the following cases and in no other:

"(a) If the manifestations of intention of either party are uncertain or ambiguous, and he has no reason to know that they may bear a different meaning to the other party from that which he himself attaches to them, his manifestations are operative in the formation of a contract only in the event that the other party attaches to them the same meaning.

"(b) If both parties know or have reason to know that the manifestations of one of them are uncertain or ambiguous and the parties attach different meanings to the manifestations, this difference prevents the uncertain or ambiguous manifestations from being operative as an offer or an acceptance.

"(c) If either party knows that the other does not intend what his words or other acts express, this knowledge prevents such words or other acts from being operative as an offer or an acceptance."

See, also, 10 Tex. Jur. 27, § 13; Hubbard City Cotton Oil & Gin Co. v. Nichols (Tex. Civ. App.) 89 S. W. 795; Stong v. Lane, 66 Minn. 94, 68 N. W. 765.

The point here under consideration is well illustrated by the old English case of Raffles v. Wichelhaus, 2 H. & C. 906, 33 L. F. Exch. 160. In that case one party contracted to buy, and the other to sell, a certain number of bales of cotton "to arrive ex Peerless from Bombay." It developed that there were two ships called "Peerless" sailing from Bombay, one to arrive in October and the other in December. One party contended that the cotton was to be delivered in October and the other contended that it was to be delivered in December. The court said: "There is nothing on the face of the contract to show that any particular ship called the Peerless was meant; but the moment it appears that two ships called the Peerless were about to sail from Bombay there is a latent ambiguity, and parol evidence may be given for the purpose of showing that the defendant meant one Peerless and the plaintiff another. That being so, there was no concensus ad idem, and therefore no binding contract."

We have examined the evidence very carefully for the purpose of determining whether or not the evidence was sufficient to show that the agent had in mind a renewal of the policy of insurance on the merchandise, or knew or should have known that Mr. Lewis had in mind a renewal of such policy, and we have serious doubt of the sufficiency thereof. However, in view of the fact that the case must be reversed for the reason heretofore given, we have concluded to remand the case for further development without further comment on the evidence.

The only issue submitted to the jury was as follows: "At the time of the conversation between J. N. Lewis, one of the plaintiffs in this case, and Sam Seay Ford about a renewal of the policies of the said J. N. Lewis was it understood by both J. N. Lewis and Sam Seay Ford that he referred to the policy of insurance on the millinery establishment run in the name of Mrs. Lewis and that both the said J. N. Lewis and the said Sam Seay Ford were speaking with reference to the policy in the name of J. N. Lewis as well as the policy in the name of Mrs. Lewis." To which the jury answered, "Yes."

In view of another trial, we deem it proper to call attention to the fact that the issue as submitted to the jury does not accurately and clearly submit to the jury the issue of the intention and understanding of each of the parties at the time of the conversation in question. We suggest that the court submit to the jury in a separate issue the question of the intention or understanding of each of the parties.

The plaintiffs' contention is that, since the agent actually wrote a renewal policy on the merchandise, and did not thereafter advise them that it had been canceled, the new policy remained in force. The evidence is

clear, however, that the agent took the policy to Mrs. Lewis for the purpose of making delivery and collecting the premium, but that Mrs. Lewis did not accept the policy. She testified that she did not accept it at that time because she did not have the money. There was therefore no acceptance of the policy of insurance at that time, and the company did not thereby become bound as the insurer.

The judgment of the trial court is reversed, and the cause remanded for a new trial.