. [No. 30319.. Department Two.  December 4, 1947.]

F. W. DOMS *et al., Respondents,* v. GEORGE H. BARROW *et al., Appellants.*[1]

*A. J. Hutton* and *Watt & Perrine,* for appellants.

*Ralph Purvis,* for respondents.

[1]Reported in 187 P. (2d) 627.

BEALS, J.—By warranty deed, dated January 12, 1946, plaintiffs F. W. and Mabel L. Doms, husband and wife, received title from Boyd D. and Ruth M. Caudill, his wife, to a tract of land in Kitsap county, Washington, described as:

"The North half of the East quarter of the Northwest quarter of the Southwest quarter, Section 5, Twp 23 North Range 1 East, W. M."

This five-acre tract was unimproved and covered with second-growth timber, and will be hereinafter referred to as tract A. The deed contains no reference whatever to any improvements on the property.

The warranty deed, above referred to, was issued pursuant to a contract, dated April 9, 1945, whereby Mr. and Mrs. Caudill agreed to sell to plaintiffs the tract described above, together with certain personal property consisting of stock, an electric brooder, and specified household furniture. The contract makes no reference to a dwelling, but provides that the improvements on the premises be kept insured against loss by fire, for vendors' benefit, in the sum of eight hundred dollars.

A quarter of a mile south of the south boundary of tract A was a ten-acre tract, hereinafter referred to as tract B, described as: "The East quarter of the Southwest quarter of the Southwest quarter of Section 5, Township 23 North, Range 1 East W. M."

Upon the south half of tract B stood an old dwelling house and some structures for keeping chickens, and so forth, and plaintiffs, under the mistaken belief that the house stood upon the land which they had purchased, occupied the house and resided there until July, 1946, when they left the state of Washington and took up their residence in Minnesota. Concerning Mr. Doms' moving into the house, the following appears in the course of his testimony (the exhibits "A" and "B" being the contract of sale and deed of tract A from the Caudills to plaintiffs):

"Q. And when you purchased from Mr. Caudill, did you think that that house was located on the property described in these exhibits, 'A' and 'B'? A. I thought it was right."

Plaintiffs never, at any time, acquired any right, title, or interest in any portion of tract B or the improvements thereon, but, at all times believing that the house which they had occupied was situated upon tract A, which they had purchased, they, at the time of their departure, requested James I. Justice, a neighbor, to endeavor to find a purchaser for their property, leaving with Mr. Justice a correct legal description of tract A. Why plaintiffs believed that the house was located on tract A, does not appear from the evidence. It may be inferred that plaintiffs' grantors had occupied the house. If Mr. Justice succeeded in finding a prospective buyer, it was understood, as he testified, that he would notify plaintiffs, who would conduct further negotiations. Plaintiffs left a key to the house with another neighbor, a Mr. Marks, who occupied the nearest house. Plaintiffs told Mr. Justice that their price for the house, land, and furniture was twenty-six hundred dollars.

A short time after plaintiffs left for Minnesota, Mr. Justice met defendants Barrow, who were looking for a location, and showed them the paper plaintiffs had left with him, which set forth the description of the property and the price. This writing, which plaintiffs delivered to Mr. Justice, is in evidence, and authorized Mr. Justice to sell tract A for twenty-six hundred dollars or to lease the property. The writing contains other matter not here pertinent, but does not refer to any house or furniture.

Mr. Justice, who was not a real-estate salesman and expected no compensation, had never checked the description of the property, but he knew that plaintiffs had been occupying the house on tract B. He naturally assumed that plaintiffs knew what property they owned, and that the property which plaintiffs had exhibited to him coincided with the description of the government subdivision that they had given him, which, in fact, described tract A. Mr. Justice then showed tract B to defendants as the property which plaintiffs owned and desired to sell.

After examining the property, defendants stated that they would pay twenty-six hundred dollars for the place,

and Mr. Barrow deposited five hundred dollars in a bank at Charleston, as he testified, "in escrow." The record contains no evidence as to the exact nature of Mr. Barrow's arrangement with the bank, save that Mr. Barrow testified that he signed no escrow agreement. A few days thereafter, defendants moved into the house and have occupied the same ever since.

Plaintiff F. W. Doms testified that, when he purchased tract A, a policy of title insurance was delivered to him, which policy is in evidence, having been issued to Joseph and Fay Haas, whose connection with the title is not disclosed by the record. The policy insures the title to tract A. Mr. Doms testified that he knew tract A, which he purchased, contained five acres, while the legal description of tract B comprises ten acres. Of course, the south half of tract B contains five acres.

Soon after moving into the house, Mr. Barrow checked the legal description of the property (tract A), which Mr. Justice had furnished him, with records at the courthouse, and, finding that no improvements were assessed in connection with this description, made a further check which disclosed that the house was not upon tract A, and that tract B, upon which the house was situated, was listed as belonging to Kitsap county. Mr. Barrow then ascertained that the property had been sold for taxes, and purchased from the owners the certificate which they had received from the county, paying to the owners of the certificate and to the county five hundred dollars for a tax deed.

Mrs. Bradshaw, plaintiffs' daughter, testified that, about August 13, 1946, she interviewed defendants at the house her parents had formerly occupied, and was advised by defendants that the house was not on the property plaintiffs had agreed to sell.

September 4, 1946, Mr. Barrow wrote Mr. Doms, stating that he did not desire to be longer responsible for the furniture and that, upon his attorney's advice, he requested Mr. Doms to remove the personal property within thirty days, stating that he would turn it over to anyone designated by Mr. Doms. Thereafter, some negotiations were had be-

tween Mr. Barrow and persons to whom Mr. Doms had written concerning the matter, but the furniture never was removed and remained in Mr. Barrow's possession.

November 14, 1946, plaintiffs filed in this action their complaint against the defendants, alleging that, prior to June 1, 1946, plaintiffs "were in possession, as owners, of a residence dwelling house and furniture, located on" tract B; that plaintiffs

" . . . had been in possession of said residence dwelling since April 9, 1945 and had mistakenly believed that said dwelling was located on the North half of the East quarter of the Northwest quarter of the Southwest quarter, Section 5, Township 23, North, Range 1 East, W. M., having purchased said residence dwelling from Boyd D. Caudill and Ruth M. Caudill, his wife."

The complaint continued by alleging that, on or about August 1, 1946, plaintiffs had entered into an oral contract "for the sale of the above described residence dwelling," together with certain itemized pieces of furniture, to the defendants, who agreed to pay plaintiffs twenty-six hundred dollars, in cash, "for said property"; that defendants took possession of the premises and later discovered that "the above described residence dwelling" was not located on tract A but was, in fact, on tract B, and that defendants then purchased tract B from Kitsap county; that defendants had refused to pay plaintiffs "the purchase price of said residence dwelling and personal property therein," and refused to deliver possession of the property to plaintiffs; that defendants were wrongfully withholding possession and use "of said residence dwelling and furniture," and had no right, title, or interest therein.

In their complaint, plaintiffs prayed only that defendants be required to surrender possession of the residence dwelling and furniture to the plaintiffs. Later, their complaint was amended by adding an alternative prayer for judgment against defendants in the sum of twenty-six hundred dollars, together with costs, and that any such judgment rendered be a purchase-money lien on tract B.

Defendants' demurrer to plaintiffs' complaint having been overruled, defendants filed their answer and cross-complaint denying, *inter alia*, that plaintiffs had ever purchased the dwelling referred to or that defendants had ever entered into an oral contract of sale for a residence dwelling or for any furniture. They also alleged that plaintiffs had authorized Mr. Justice to sell tract A, and that Mr. Justice had shown defendants tract B and the dwelling situated thereon, and that defendants had agreed to purchase the same from plaintiffs, if plaintiffs could give good title thereto; that, upon discovering that plaintiffs had no title to tract B, defendants ceased negotiations with Mr. Justice and purchased tract B from the owners thereof. Defendants further alleged that they had repeatedly requested plaintiffs to remove the personal property listed in plaintiffs' complaint, but that plaintiffs had failed to do so. By way of an affirmative defense, defendants alleged their purchase of tract B, and that plaintiffs never owned any interest in that tract or in any buildings thereon.

Upon the issues presented by plaintiffs' complaint and defendants' answer, the action was tried to the court and resulted in findings of fact and conclusions of law in plaintiffs' favor, in accordance with which a judgment was entered in favor of plaintiffs and against defendants for the sum of $2,348.50 (twenty-six hundred dollars less taxes paid by defendants on the south half of tract B), the judgment declaring that plaintiffs should have a purchase-money lien against the south half of tract B.

Their motion for a new trial having been denied, the defendants appealed to this court.

Appellants assign error (1) upon the overruling of defendants' demurrer to plaintiffs' complaint; (2) upon the denial of defendants' motions to strike and to separately state; (3) upon the denial of defendants' motion to make more definite and certain; (4) upon the making of the court's findings of fact and conclusions of law, in view of the fact that there was no testimony to sustain its findings of fact and conclusions of law; (5) upon the entry of judgment in plaintiffs' favor and the provision that the judgment

be a purchase-money lien on defendants' property, and (6) upon the denial of defendants' motion for a new trial. We find it necessary to consider only assignments four and five.

It is, of course, admitted that respondents never owned tract B nor any portion thereof. There is not a scintilla of evidence that respondents ever bought the "residence dwelling," separate from the land, from the Caudills or from anyone else, or that they had any title thereto. The evidence shows that, for some time prior to leaving for Minnesota, respondents were living in the dwelling situated on tract B and owned the furniture therein. It appears that they thought that they were the owners of the real estate, which, of course, included the dwelling, but their belief was unfounded, and, had they taken any pains at all to discover the location of the government subdivision which they did own, they would have ascertained that their land lay a quarter of a mile north of the land upon which the house stood. This is in accordance with the allegations in their complaint, referred to above. Respondents occupied tract B under a misapprehension and without any legal right. Overlooking respondents' carelessness in not checking the description of the land which they had bought and locating their purchase upon the ground, it appears that they, in good faith, believed that they owned five acres of land, upon some portion of which stood the house which they were occupying.

In their complaint, respondents alleged that they were in possession of a dwelling house and furniture, which they mistakenly believed was located on tract A, and that they entered into an oral contract for the sale of the dwelling house and furniture (not alleging that they agreed to sell any real estate whatever); that they subsequently demanded that appellants pay the purchase price of the residence dwelling and personal property, and that appellants were wrongfully withholding possession of the house and furniture without right. By their amendment to the complaint, respondents merely enlarged their prayer for judgment, as above set forth.

During the course of the trial, the court referred to the case of *Slocum v. Peterson,* 131 Wash. 61, 229 Pac. 20, 40 A. L. R. 1071, citing the case as an authority for the decision which the trial court rendered. In the opinion, the court referred to the rule that a purchaser who has been let into possession by his vendor cannot set up against his vendor a paramount outstanding title. The facts in the case cited differ from those in the case at bar, the court stating that the vendee had never entered into possession of the land which was the subject matter of the controversy, and that the plaintiff had himself rescinded the contract of sale.

It appears, then, that respondents, being the owners of five-acre tract A, contend that they offered to sell to appellants land which they believed was the five-acre tract which they owned, upon which was located a dwelling, chicken house, and so forth, and also certain articles of household furniture, all at the price of twenty-six hundred dollars; that, in fact, respondents did not own the house or the land upon which it was situated and had no right, title, or interest in or to that property, having merely occupied the house for a few months under the mistaken idea that it stood upon the land which they had purchased.

The matter of the furniture need not be further considered, as appellants tendered the same to respondents and hold the same subject to respondents' order.

Respondents contended below, and contend here, that, appellants having taken possession of the house, as testified by Mrs. Barrow, in reliance upon Mr. Justice's statement that "it would be perfectly all right to move," and having continued to occupy the house, the title which appellants later received from Kitsap county inures to the benefit of respondents, and that appellants, consequently, are indebted to respondents, in accordance with the judgment appealed from.

Mr. Justice testified that, in his dealings with Mr. Barrow, nothing was said about the sale of the house separate from the land. He also testified that both Mr. Caudill and Mr. Doms had told him that the land had not been surveyed and that "it was merely a guess as to where the lines were."

Respondents argue that, under these circumstances, because appellants occupied the house, their purchase of the land upon which the house is situated inures to respondents' benefit. Respondents, then, claim the advantage, to which the trial court held that they were entitled, which arose because of their own carelessness and negligence in taking no steps whatever to ascertain the boundaries of the five-acre tract which they had purchased, and claim that they are entitled to the sale price of the land and house (in their complaint referring only to the dwelling), while retaining title to the five-acre tract which they own.

The question presented is novel, but we find some decisions which bear upon the questions involved.

In the case of *Plank v. Maxwell*, 25 Colo. App. 158, 136 Pac. 465, it appeared that the plaintiff had sold and conveyed to defendant a forty-acre tract of unimproved land, it being admitted that the plaintiff had directed defendant to a different and more valuable tract which plaintiff did not own, and conveyed to him an inferior tract which he did own. Thereafter, the plaintiff sued the defendant upon notes given for the purchase price, which were secured upon the land conveyed. The court said:

"There is no attempt made by plaintiff to dispute the deception, but he bottoms his whole defense upon ignorance as to where the land he owned and was selling actually lay."

After citing authorities, the opinion continues:

"Under the foregoing authorities plaintiff having stated unqualifiedly and as of his own knowledge where the land which he owned lay, he cannot now be heard to say that he had no such knowledge, or that defendant was so negligent in accepting his statement as to bar his right of recovery.

"It is urged on behalf of plaintiff in the opening brief (no reply brief has been filed by him) that there was never a meeting of the minds of Plank and Maxwell because of the misdescription of the land. It is not entirely clear how this contention (which we are disposed to believe sound) can avail plaintiff in his attempt to collect the balance of the purchase price of the land. Two courts have found, properly as we think, for the defendant, the appellee here."

In the case of *Barfield v. Price*, 40 Cal. 535, an action for the recovery of a tract of land which the plaintiff contended had been conveyed by mistake on the part of the plaintiff vendor, the trial court sustained a demurrer to the complaint and entered judgment of dismissal, which was affirmed by the supreme court. In the course of the opinion, the court stated that, in case of mutual mistake as to land conveyed, "the minds of the parties never met, and there was really no contract of sale at all"; that, under such circumstances, the court might order a rescission of the sale altogether, each party having been under the belief that there was an agreement, when, in fact, there was none.

In the case of *Kyle v. Kavanagh,* 103 Mass. 356, 4 Am. Rep. 560, the supreme judicial court, in an action to recover the price of land conveyed to the defendant, approved an instruction given by the trial court to the jury to the effect that,

" . . . if the defendant was negotiating for one thing and the plaintiff was selling another thing, and their minds did not agree as to the subject matter of the sale, there would be no contract by which the defendant would be bound, though there was no fraud on the part of the plaintiff. This ruling is in accordance with the elementary principles of the law of contracts, and was correct."

The supreme court of Ohio, in the case of *Irwin v. Wilson,* 45 Ohio St. 426, 15 N. E. 209, reversed a judgment in favor of the defendant in an action for the rescission of an exchange of two tracts of real estate. The action was based upon a mistake by all parties as to the identity of one of the tracts of land. The judgment of the trial court was reversed and judgment entered for the plaintiff, rescinding the exchange made by the parties.

In the case of *Stong v. Lane,* 66 Minn. 94, 68 N. W. 765, an action for the recovery of a deposit made in connection with a proposed sale and purchase of real estate, the court, after considering the facts, reached the conclusion that the minds of the parties never met, because of a misunderstanding concerning the description of the property to be sold and purchased, and that, for this reason, there never was

any binding agreement between the parties. The case of *Crowe v. Lewin,* 95 N. Y. 423, is to the same effect.

The trial court found that, on or about July 11, 1946, respondents entered into an oral contract for the sale of the "residence dwelling," not the land, together with the listed items of furniture, to appellants. The record contains no evidence that any contract, oral or otherwise, for the sale of the house considered apart from the land was ever entered into. The testimony is all to the contrary. Mr. Barrow testified that he never considered buying the house apart from the land, and that no such thought was ever suggested in his conversations with Mr. Justice. Mr. Justice, testifying as a witness for respondents, on direct examination, stated that Mr. Doms told him that he wished to sell the property for twenty-six hundred dollars. The following then occurred:

"Q. [by respondents' counsel] For the house and furniture? A. That was for the whole place,—the house and land. THE COURT: Well, the house and the furniture? THE WITNESS: Yes, the whole place. MR. HUTTON: I think the witness answered—for the house and real property? THE COURT: The whole thing? THE WITNESS: For the place as described. THE COURT: For the house and the furniture and everything? THE WITNESS: Yes."

Later, on direct examination, in answer to the question by respondents' counsel, "In other words, he agreed to buy the place?" the witness answered, "He would buy the place as described in the paper," the paper in question being the written authority given to Mr. Justice by Mr. Doms, which contained merely the legal description of tract A, the document making no reference to either house or furniture. On cross-examination, the witness testified that nothing was ever said, in conversations between the witness and Mr. Barrow, concerning the sale of the house separate from the land.

Mr. Justice testified that, during his negotiations with Mr. Barrow, he showed the latter his written authority from respondents, containing the legal description of tract A, and that, as Mr. Justice testified on direct examination,

Mr. Barrow agreed to "buy the place as described in the paper." Beyond question, appellants orally offered to purchase tract A under the mistaken belief that the five-acre tract therein described was the land upon which the house, which Mr. Justice showed them as respondents' property, was situated. Appellants had no reason to doubt that the property which Mr. Justice showed them was the five-acre tract described in the written authority given to Mr. Justice by respondents. Very shortly thereafter, appellants, instead of relying upon these statements, carefully checked the description with the official county records and discovered the mistake, whereupon appellants notified respondents and requested them to remove the furniture.

In granting judgment in favor of respondents, the trial court based its ruling upon the well-recognized rule of law, as stated in 55 Am. Jur. 805, § 381:

"The general rule is that a purchaser in possession under an executory contract cannot purchase an outstanding private title and then assert such title against his vendor while he remains in possession. His only right is to set off against the purchase price the money expended in acquiring the outstanding title. He cannot, by acquiring an outstanding title, avail himself of· it so as to defeat his vendor's right to the purchase money. He is not permitted to assert an outstanding title in a third person, or a paramount claim or interest in himself, whether acquired before or after the execution of the contract of sale."

This principle of law is well established and was recognized by this court in the cases of *Slocum v. Peterson, supra,* and *Stephens v. Kesselburg,* 19 Wn. (2d) 427, 143 P. (2d) 289.

However, before this rule may become operative, it must appear that there is a valid contract between the parties. In such cases, before a court of equity will grant relief, the existence of a legal contract upon which such relief may be based must clearly appear. *Richardson v. Taylor Land & Livestock Co.,* 25 Wn. (2d) 518, 171 P. (2d) 703.

Before respondents may recover in this action, it must appear, from the record, that appellants were in possession

of the property under a valid executory contract. If there were no such contract, appellants were at liberty to acquire title to the property from a third party. Respondents, having no right to or in tract B, had no right in law to let anyone into possession thereof. Respondents, then, bear the burden, under their amended complaint, to establish that they had entered into an oral contract with appellants for the sale to them of tract B, and, if such contract had been entered into, that there had been part performance of the contract, sufficient to take it without the operation of the statute of frauds. Of course, if the record fails to establish that a valid oral contract between the parties was entered into, questions concerning the effect of the statute of frauds are not material.

Respondents, of course, do not contend that the negotiations between the parties resulted in an oral contract on the part of appellants to purchase tract A. In their complaint, respondents simply allege that the parties to this action entered into an oral contract for the sale of the "residence dwelling," and the trial court entered a finding to this effect. Respondents, in their complaint, also allege that appellants purchased the real estate upon which the dwelling was situated, and, in accordance with the evidence, the trial court so found.

In 37 C. J. S. 824, § 286, is found the following text:

"The proof of an oral contract relating to land within the statute of frauds, as well as of the facts required to take it out of the statute, must be clear, definite, and unequivocal if such a contract is to prevail against the statute.

"Where it is sought to overcome the effect of the statute as to a contract concerning land or an interest therein, the general rule is that the agreement and its terms, as well as the elements or acts necessary to take the contract out of the statute, as, for example, part performance, must be proved clearly, definitely, and unequivocally by the party seeking its enforcement, and the acts to take the contract out of the statute must also be shown by the same high degree of proof to be strictly and exclusively referable to the contract and done pursuant thereto. However, the evidence need not be of any particular kind or class."

See, also, 49 Am. Jur. 928, Statute of Frauds, § 622. The opinion of this court in *Payn v. Hoge,* 21 Wn. (2d) 32, 149 P. (2d) 939, is to the same effect.

While this action was not brought for the purpose of procuring a decree of specific performance, the relief sought by respondents is based upon the same equitable principles as would apply in an action for that relief.

While the writing which respondents delivered to Mr. Justice might well be held to have conferred authority upon him to enter into a contract, Mr. Justice, respondents' witness, testified that he was merely to find a purchaser and then notify respondents, who would accomplish the necessary papers for a completed transaction, if the terms were satisfactory. From the witness's testimony, it is clear that he did not intend to enter into any contract with appellants, and that his negotiations with appellants were merely preliminary. This testimony is supported by the fact that Mr. Justice left the entire matter to Mr. Barrow, who then deposited five hundred dollars with the bank under some agreement, concerning which the evidence is silent. Respondents did not offer in evidence the letter which they received concerning the transaction, and no officer or agent of the bank testified. The evidence indicates that appellants took possession of the vacant house in anticipation of some future agreement for the purchase of the property. The finding of the trial court that appellants did enter into an oral contract for the sale of the "residence dwelling" is not supported by the evidence.

Respondents strongly rely upon the case of *Slocum v. Peterson, supra,* and the trial court indicated that, in its opinion, this case was decisive of the question in the case at bar. In the case cited, this court recognized the general rule that a purchaser in possession cannot assert a title acquired by him adverse to his vendor while he remains in possession under the sale contract. The facts in the case at bar do not bring the case within the rule referred to by the court.

This court, in the case of *Stephens v. Kesselburg, supra,* recognized the general rule that a tenant or purchaser in

possession is estopped to deny the title of his landlord or vendor and will not be permitted to acquire a title adverse to him, citing *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3, 126 Am. St. 880, and *First Nat. Bank of Seattle v. Mapson,* 181 Wash. 196, 42 P. (2d) 782. The court continued, however, by stating that the rule does not prohibit a tenant from purchasing the property at a judicial or execution sale, because, by so doing, he is not disputing his landlord's title as of the time when the tenancy was created, but acquires a title which subsequently arose, citing *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648, and *Twardus v. Crewson,* 182 Wash. 522, 47 P. (2d) 829. The opinion continues:

"For the same reason, it might well be argued that the general rule would not ordinarily prevent a vendee under a contract from purchasing at such judicial or execution sale."

The court pointed out that, in the first two cases cited in the opinion, *supra,* the vendees had agreed to pay the taxes which were later foreclosed, while in the *Atwood* and *Twardus* cases, *supra,* it appeared that the tenants had not agreed to pay the encumbrances. The court stated the rule to be

". . . that a tenant or purchaser in possession of real property, who has agreed, assumed, or is obligated, to pay an existing encumbrance thereon, will not be permitted to acquire title to the property adverse to the landlord or vendor through a sale and purchase thereof under proceedings to foreclose the lien of such encumbrance."

The case was decided upon the pleadings only, without evidence, and the court held that, as, under the pleadings, to which a demurrer was sustained by the trial court, the vendee entered into possession of the property under an agreement to pay the taxes, he could not later acquire title to the property through a tax sale.

In the case of *Holzer v. Rhodes,* 24 Wn. (2d) 184, 163 P. (2d) 811, we said:

"The rule that a tenant is estopped to deny or dispute his landlord's title applies only to the landlord's title as it existed at the time the tenancy began, and does not pro-

hibit the tenant from becoming a purchaser at a sale pursuant to a judgment or decree of a court. [Citing cases.] At the time respondents became tenants of appellant, he was the owner of the property occupied by them by virtue of the deed he had received from Warren. The respondents are not denying or disputing that title. They are claiming title by virtue of their tax deed received from the county treasurer. That title arose subsequent to the title of appellant, and they could assert it without surrendering possession of the premises."

■ Respondents attempt to distinguish this case from the case at bar by arguing that the case cited involved a landlord and tenant relationship. At least in general, this is distinction without a difference and we hold that the same rule applies as to facts similar to those disclosed by the record herein, assuming, for purposes of argument, that there was a contract between these parties. Respondents further attempt to distinguish the case by arguing that, had appellants never taken possession of the property, they would never have discovered that respondents were not the owners of the land, and that respondents, at some later date, might have discovered this fact and themselves bought in the tax title. This argument is unavailing.

■ Appellants took possession of the vacant house under the belief that they had made an offer for the land upon which they were led to believe the house was situated, which offer respondents would accept. It does not appear that respondents ever did accept this offer. Their agent, Mr. Justice, testified that he did not accept it, but submitted it to respondents. The record contains no evidence upon which a finding could be based that Mr. Barrow, by leaving five hundred dollars at the bank for a few days, made any offer to purchase the property which was binding upon him or which he could not withdraw prior to acceptance thereof by respondents. Of course, appellants took possession of the house under a mistake of fact, believing that it was situated upon the property which they thought belonged to respondents and which they desired to purchase. Respondents seem to contend that, by some theory, they owned the house, because, in their brief, they say that they could have moved

the building from the land upon which it was situated onto other land. The record discloses nothing which shows any title in the respondents to the house considered separately from the land, and it is admitted that they never had any title to that.

By amending the prayer to their complaint, asking in the alternative for judgment for twenty-six hundred dollars, and by the court's rendition of judgment in that amount, it clearly appears that respondents rely upon a contract to purchase at least five acres of the land, with the house as appurtenant thereto.

Respondents have parted with nothing. Neither they nor anyone representing them was occupying the house at the time appellants took possession thereof. In our opinion, there was never a valid, consummated, oral or any other contract between the parties for the sale of the property, pursuant to which appellants took possession of the house. Had such possession been taken under a valid contract, containing the terms of the alleged oral contract as contended by respondents, appellants still, under authority of our opinions cited above, might have purchased the tax title, they not having agreed to pay the taxes.

The judgment appealed from gives respondents a considerable sum as the proceeds of property which they never owned, simply because respondents had, without right and due to a mistake, believed that they owned the land. It might well be argued that the findings of fact do not support the judgment, as the court found no more than that appellants orally agreed to buy the "residence dwelling," but we pass that question.

The judgment appealed from is reversed, with instructions to dismiss the action.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.