**Thomas R. WICKWIRE, Appellant and Cross-Appellee,**

v.

**Patrick McFADDEN, d/b/a M/C Enterprises, Tryck, Nyman, & Hayes, Inc., and Carl Lanz, Appellees and Cross-Appellants.**

**Nos. 5088, 5306.**

Supreme Court of Alaska.

Sept. 18, 1981.

---

James F. Peterson, Juneau, for appellees/cross-appellants.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ. and BLAIR, Superior Court Judge.*

## OPINION

PER CURIAM.

We previously reversed a summary judgment in favor of McFadden in this action to quiet title. *Wickwire v. McFadden*, 576 P.2d 986 (Alaska 1978). On remand, McFadden supplemented the record and renewed his motion for summary judgment, which was again granted. Once again, Wickwire has appealed.

The facts, as set forth in our earlier opinion, are these:

"In 1972, McFadden entered into a real estate contract with Pioneer Brokerage and Sales, Inc. (Pioneer) under which McFadden was to purchase and subdivide a tract of land in Juneau. The real estate contract was never recorded but the property was subdivided by McFadden and the subdivision was approved by the Greater Juneau Borough. Under the terms of the real estate contract, Pioneer agreed to release each individual lot to McFadden in exchange for $1,200. The contract also contained a termination clause which provided that, if the contract was terminated, Pioneer would retain title to all of the property except property which had been dedicated to a public use and lots which had been sold, so long as Pioneer had been paid $1,200 for each lot.

Appellant Wickwire and McFadden then made an oral contract under which Wickwire agreed to purchase Lot 4, Block B of the subdivision. On May 20, 1974, Wickwire signed escrow instructions pursuant to the oral contract and paid $1,200 to Transamerica Title Company as a down payment. On the same date,

Thomas R. Wickwire, in pro. per.

---

* Blair, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

McFadden signed seller's instructions. Meanwhile Wickwire had taken possession of the lot and begun construction of a house. Wickwire was to pay the balance of the purchase price no later than July 15, 1974. Just after Wickwire signed the escrow instructions, McFadden and Pioneer had a dispute as to whether McFadden had breached the contract between them. Pioneer purported to terminate the contract on June 19, 1974. Wickwire learned of the dispute and made no further payments to McFadden. Wickwire inquired of Pioneer's attorney whether McFadden had any further interest in Lot 4, Block B; Pioneer's attorney expressed his opinion that McFadden had no further interest. Wickwire next obtained a quitclaim deed from Pioneer which was executed and recorded on January 31, 1975. The amount Wickwire paid for this deed is not reflected in the record." (footnote omitted).

576 P.2d at 986–87.

We reversed a summary judgment in McFadden's favor because "there was a material question of fact whether McFadden could convey good title to him [Wickwire] at the time for performance of their contract." 576 P.2d at 987. On remand, McFadden supplemented the record with three affidavits purporting to establish that he could convey good title to Wickwire at the time of the expected performance of their contract.

In a memorandum decision the superior court ruled that McFadden's supplemental affidavits established his contention that "he had equitable title and that equitable title had never been conveyed to either Pioneer Brokerage or to [Wickwire]." The

court further ruled that "title and right to sell the property clearly existed [in McFadden] at the time Wickwire was supposed to pay the balance of the purchase price." The court also stated that Wickwire "may rescind the contract and give up possession or he may keep possession and sue for damages. However, he may not keep possession and the purchase price." The latter ruling represents an alternative argument, based on estoppel, for granting summary judgment in McFadden's favor. Because of the lower court's earlier ruling in favor of McFadden on the question of title, we did not address this alternative argument in our first consideration of the case.[1] We now find the estoppel argument dispositive and therefore do not reach the argument advanced for affirmance, namely that McFadden had marketable title at the time title was required to be conveyed.

The general rule is well established that a purchaser of realty cannot keep both possession and the purchase price while attacking his vendor's title.[2] Wickwire attempts to take himself outside this rule by asserting that possession does not estop him from challenging *McFadden's* title because he holds the realty under a quitclaim deed from Pioneer. This argument fails, however, because it is also well established that a purchaser cannot set up an outstanding interest acquired by him or her in a challenge to title, except to the extent of being reimbursed for his or her expense in obtaining that outstanding interest.[3] Simply put, on these facts Wickwire must pay for the land he has obtained and utilized.

1. McFadden's original memorandum in the superior court briefly mentioned this argument but cited no authority for it. Judge Schulz made no mention of this argument in his first ruling, since he based his decision on the theory that McFadden held adequate title.

2. *See Mason v. Ellison*, 63 Ariz. 196, 160 P.2d 326, 329 (1945); *Butler v. Woodburn*, 19 Cal. 420, 122 P.2d 17, 19 (1942); *Garvey v. La Shells*, 151 Cal. 526, 91 P. 498, 500–01 (1907); *Ross v. First Trust & Savings Bank*, 123 Mont. 81, 208 P.2d 490, 491 (1949); *Nethery v. Olson*, 41 Wash.2d 173, 247 P.2d 1011, 1013–14 (1952). *See generally*, Annot., Taking or Remaining in Possession Under Executory Contract for the Purchase of Land as Waiver of Right to Complain of Defects in or Failure of Vendor's Title, 34 A.L.R. 1321 (1925).

3. *See Garvey v. La Shells*, 151 Cal. 526, 91 P. 498, 501 (1907); *Doms v. Barrow*, 29 Wash.2d 366, 187 P.2d 627, 633 (1947). *See generally*, Annot., Right of Purchaser to Acquire and Assert Outstanding Title as Against Vendor, 40 A.L.R. 1078 (1926).

■ What happened in this transaction apparently was precisely what the original contract between Wickwire and McFadden called for. Legal title was transferred directly from Pioneer to Wickwire, and Wickwire's down payment also went to Pioneer, either directly or through McFadden. The only hitch in the transaction was that certain liens affecting the subdivision caused Pioneer to terminate its contractual agreement with McFadden, at just the time when Wickwire was obligated to make his final payments. Wickwire may have been within his rights in refusing to make further payments at that time, but having remained in possession he is now estopped from asserting McFadden's defective title as a defense to payment. Nor is it a defense to say that he is in possession under the deed from Pioneer rather that from McFadden.[4] All Wickwire is entitled to do is deduct the cost of obtaining the quitclaim deed from Pioneer from his obligation to McFadden.[5]

■ The current record does not establish the cost to Wickwire of obtaining the quitclaim deed from Pioneer. We therefore vacate the summary judgment in favor of McFadden and remand the case for the purpose of determining that cost. The superior court is to then enter judgment in McFadden's favor for the balance due on the purchase price, less Wickwire's cost of obtaining the deed.[6]

VACATED and REMANDED.

4. Wickwire took constructive possession at the time that the contract of sale with McFadden closed. This occurred upon Wickwire's presentation of the down payment to Pioneer, as required by the contract. The deed contemplated under the original contract was one from Pioneer to Wickwire. The deed which Wickwire actually acquired from Pioneer is indistinguishable in effect from the deed that he had contracted for with McFadden.

5. This is precisely what the court ruled in relation to Wickwire's expense in clearing his title from the blanket liens which had led to the Pioneer-McFadden dispute.

6. On cross-appeal, McFadden claims that the trial court abused its discretion by refusing to award him full attorney's fees. Full fees were justified, McFadden argues, because Wickwire assertedly acted in bad faith. *See Davis v. Hallett*, 587 P.2d 1170, 1171–72 (Alaska 1978)

(absent a showing of "bad faith or vexatious conduct," it is manifestly unreasonable to award full fees). The trial court is in the best position to determine such a matter, but McFadden has not shown us, nor can we find, where in the record a bad faith claim was clearly raised or made out. Because it was not properly raised or briefed at the superior court level, the bad faith issue is not properly before us. *See Jeffries v. Glacier State Telephone Co.*, 604 P.2d 4, 11 (Alaska 1979). Based on what was before it, the trial court did not abuse its discretion in failing to award full fees. However, even though the trial court did not err, because we are remanding the case, the attorney's fee award must be vacated, pending the court's resolution of the remaining issue of Wickwire's cost of obtaining the quitclaim deed.